## IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF TEXAS
## LUBBOCK DIVISION

STATE OF TEXAS AND
TEXAS DEPARTMENT OF
TRANSPORTATION,

    *Plaintiffs,*

v.

U.S. DEPARTMENT OF
TRANSPORTATION, FEDERAL
HIGHWAY ADMINISTRATION,
PETE BUTTIGIEG, in his official
capacity as SECRETARY OF
TRANSPORTATION, and
SHAILEN BHATT, in his official
capacity as ADMINISTRATOR OF
THE FEDERAL HIGHWAY
ADMINISTRATION,

    *Defendants.*

§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§
§

Civil Action No. 5:23-cv-304

## <u>COMPLAINT AND PETITION FOR REVIEW</u>

This lawsuit challenges the legality of the final administrative rule entitled *National Performance Management Measures; Assessing Performance of the National Highway System, Greenhouse Gas Emissions Measure* (the Final Rule), promulgated by the Federal Highway Administration and the Department of Transportation (collectively, DOT). The Final Rule establishes a method of measurement and reporting of greenhouse gas emissions associated with transportation (GHG Measure). The Final Rule requires state departments of transportation (State DOTs) and metropolitan planning organizations

(MPOs) to establish declining carbon dioxide ($CO_2$) targets for the GHG Measure and report $CO_2$ reductions as a "performance measure." DOT itself repealed a similar prior rule for three defects that remain in this Final Rule: 1) a lack of statutory authority for the GHG Measure; 2) the regulatory burden it imposes; and 3) its duplication of actions by other, more appropriate agencies. Plaintiffs file this Complaint and Petition for Review.

The Final Rule exceeds the statutory authority granted to DOT by Congress; is arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law; and is contrary to constitutional right, power, privilege, or immunity. The Court must vacate the Final Rule.

## **INTRODUCTION**

1.     The State of Texas and the Texas Department of Transportation (collectively, Texas or Plaintiffs) file this Complaint against the United States Department of Transportation, Federal Highway Administration, Pete Buttigieg in his official capacity as the Secretary of Transportation, and Shailen Bhatt in his official capacity as Administrator of the Federal Highway Administration (collectively, Defendants) for violations of the Administrative Procedure Act (APA) and the Moving Ahead for Progress in the 21st Century Act (MAP-21), as amended by the Fixing

America's Surface Transportation (FAST) Act and the bipartisan Infrastructure Investment and Jobs Act (IIJA).

2.     The Final Rule was published in the *Federal Register* at 88 Fed. Reg. 85,364 on December 7, 2023. A true and correct copy of the Final Rule is attached as **Exhibit 1**. Prior to adopting the Final Rule, DOT published a proposed version of the Final Rule (the Proposed Rule) on July 15, 2022. *See National Performance Management Measures; Assessing Performance of the National Highway System, Greenhouse Gas Emissions Measure*, 87 Fed. Reg. 42,401. A true and correct copy of the Proposed Rule is attached as **Exhibit 2**.

3.     The Final Rule is effective on January 8, 2024, and State DOTs must submit their initial declining CO2 targets for the GHG Measure no later than February 1, 2024. DOT will perform a significant progress determination when State DOTs submit Full Performance Period Progress Reports in the future.

## THE PARTIES

### A. Plaintiffs

4.     Plaintiff the State of Texas, by and through Ken Paxton, its Attorney General, brings this suit to assert the rights of the State and on behalf of its citizens. *See* Tex. Const. art. IV, § 22; Tex. Gov't Code, Ch. 402; *see also* Tex H.B. 1, Art. IX, § 16.01, 82nd Leg., R.S. (2011). Texas submitted comments on the Proposed Rule, attached as **Exhibit 3**. Texas also joined in support of additional comments submitted in response

to the Proposed Rule in coordination with at least 19 States, attached as **Exhibit 4** and **Exhibit 5**.

5.      Plaintiff the Texas Department of Transportation (TxDOT) is an agency of the State of Texas charged with developing the policies for the location, construction, and maintenance of a comprehensive system of state highways and public roads in Texas. Tex. Transp. Code § 201.103. Under federal law, the defendants are required to consult with TxDOT in establishing performance measures and standards. 23 U.S.C. § 150(c)(1). TxDOT is required to respond to the promulgation of performance measures by setting performance targets. 23 U.S.C. § 150(d)(1). Furthermore, TxDOT is required to report biennially regarding, but not limited to, the progress in achieving its established performance target. 23 U.S.C. § 150(e)(3). TxDOT submitted comments on the Proposed Rule, attached as **Exhibit 6**.

## B. Defendants

6.      Defendant the United States Department of Transportation is a federal agency within the meaning of the APA. *See* 5 U.S.C. § 551(1). The United States Department of Transportation is charged with oversight of the Federal-Aid Highway Program. *See* 23 U.S.C. §§ 101, *et seq.* Such oversight includes the establishment of performance measures and standards. 23 U.S.C. § 150(c).

7.      Defendant the Federal Highway Administration (FHWA) is a federal agency within the meaning of the APA. *See* 5 U.S.C. § 551(1). FHWA is an agency within

4

the federal Department of Transportation. The Secretary of Transportation has delegated its authority relevant to this suit to FHWA. *See* 23 CFR, ch. I, sub. E, part 490.

8.     Defendant Pete Buttigieg is the Secretary of Transportation and is sued in his official capacity. Secretary Buttigieg, in his capacity as Secretary of Transportation, is ultimately responsible for FHWA's establishment of performance measures and standards.

9.     Defendant Shailen Bhatt is the Administrator of FHWA and is sued in his official capacity. Administrator Bhatt is responsible in his official capacity for FHWA's establishment of performance measures and standards.

## JURISDICTION AND VENUE

10.    This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1331 (federal question), § 2202 (further necessary relief), and 5 U.S.C. §§ 701–706 (APA). There is a present and actual controversy between the parties, and Plaintiffs are challenging a final agency action pursuant to 5 U.S.C. §§ 551(13) and 704. This Court can grant declaratory and injunctive relief under 28 U.S.C. §§ 2201–2202 and 5 U.S.C. §§ 701–706.

11.    Venue is proper in this Court under 5 U.S.C. § 703 and 28 U.S.C. § 1391(e)(1) because: 1) Plaintiffs are residents of this judicial district; and 2) portions of federally-aided highways are located within this district.

## LEGAL FRAMEWORK

### A. The Administrative Procedure Act

12.     The APA governs the federal rulemaking process and sets the standards applicable when federal agencies propose and adopt final rules and regulations. 5 U.S.C. §§ 553, 551(4).

13.     The APA provides for judicial review of final agency actions by persons adversely affected by such actions. *Id.* § 702. Under the APA, a reviewing court shall "hold unlawful and set aside agency action, findings, and conclusions found to be … arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." *Id.* § 706(2)(A). A final agency action may be held unlawful and set aside if it is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." *Id.* § 706(2)(C). A reviewing court shall also "hold unlawful and set aside agency action, findings, and conclusions found to be … without observance of procedure required by law." *Id.* § 706(2)(D).

14.     A decision is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.,* 463 U.S. 29, 43 (1983).

15.     If an agency changes its position, it "must provide a reasoned explanation" for the change. *F.C.C. v. Fox Television Stations, Inc.*, 556 U.S. 502, 515 (2009). Such an action "would ordinarily demand that [the agency] display awareness that it *is* changing position. An agency may not, for example, depart from a prior policy *sub silentio* or simply disregard rules that are still on the books." *Id.*

## B. Performance Management Measures

16.     Following Congress's passage of MAP-21[1] and the FAST Act,[2] the federal Department of Transportation is required to establish measures for states to use to assess, among other things, "the performance of the Interstate System;" and "the performance of the National Highway System (excluding the Interstate System)." 23 U.S.C. § 150(c)(3)(A)(ii)(IV) and (V). Such measures are used by States in administering the National Highway Performance Program (NHPP)—a program to provide federal funding to support the National Highway System. *Id.* §§ 150(c)(A), 119(b). Funding under the NHPP is limited to specific projects. *See id.* § 119(d).

17.     DOT is required to carry out a rulemaking, in consultation with State DOTs and MPOs, to establish performance measures and standards. *Id.* § 150(c)(1). In promulgating a rulemaking, DOT must provide an opportunity to comment, consider

---

[1] Moving Ahead for Progress in the 21st Century Act, Pub. L. No. 112-141 (2012).

[2] Fixing America's Surface Transportation Act, Pub. L. No. 114-94 (2015).

any comments submitted, and limit performance measures to those described in subsection (c). *Id.* § 150(c)(2).

18.     Within one year of the promulgation of federal performance measures, states must set performance targets reflecting such measures. *Id.* § 150(d)(1). Additionally, states must biennially report on, among other issues, the progress in achieving the performance targets established in response to the federal performance measures. *Id.* § 150(e)(3).

19.     FHWA's regulations establishing performance measures to assess the performance of the National Highway System are located at 23 CFR, ch. I, subch. E., pt. 490, subpt. E.

## BACKGROUND

### A. The origin of the GHG Measure and DOT's appropriate repeal

20.     On January 18, 2017, mere days before the start of the Trump Administration, FHWA issued a final rule entitled *National Performance Management Measures; Assessing Performance of the National Highway System, Freight Movement on the Interstate System, and Congestion Mitigation and Air Quality Improvement Program* (the 2017 Rule). The 2017 Rule was published in the *Federal Register* at 82 Fed. Reg. 5970.

21.     The 2017 Rule was issued to implement performance management requirements that had been established by MAP-21 and the FAST Act. 2017 Rule, 82 Fed. Reg. at 5972. Specifically, the 2017 Rule, in part, established requirements to report the percent change in $CO_2$ generated by vehicles on the National Highway System (2017

GHG Measure). *Id.* at 5974. Under the 2017 Rule, State DOTs and MPOs with National Highway System mileage within their respective jurisdictions would "be required to establish targets and report on progress." *Id.* FHWA would then analyze the information submitted to determine whether there had been "significant progress" in achieving the respective targets. *Id.*

22.     FHWA cited MAP-21 as the source of its authority to promulgate the 2017 GHG Measure. FHWA adopted a new meaning of "performance," as used in 23 U.S.C. § 150(c)(3), to include environmental performance. FHWA now claimed numerous provisions of law supported its interpretation. *Id.* at 5995.

23.     Following another notice of proposed rulemaking issued on October 5, 2017,[3] FHWA issued a final rule entitled *National Performance Management Measures; Assessing Performance of the National Highway System, Freight Movement on the Interstate System, and Congestion Mitigation and Air Quality Improvement Program* (the 2018 Rule). The 2018 Rule was published in the Federal Register at 83 Fed. Reg. 24,920 on May 31, 2018.

24.     FHWA determined that it was necessary to repeal the GHG measure imposed by the 2017 Rule and provided three reasons for reversing course. First, FHWA had re-examined its statutory authority and determined that its "prior interpretation was based on a strained reading of the statutory language in section 150,

---

[3] National Performance Management Measures; Assessing Performance of the National Highway System, Freight Movement on the Interstate System, and Congestion Mitigation and Air Quality Improvement Program, 82 Fed. Reg. 46,427 (Oct. 5, 2017).

and [the reading was] one that did not fully consider the limitations imposed by the statute itself and other relevant considerations." *Id.* at 24,923. Second, FHWA determined that "the GHG measure impose[d] unnecessary regulatory burdens on State DOTs and MPOs with no predictable benefits." *Id.* at 24,924. Finally, FHWA found that the 2017 Rule's GHG measures were duplicative of regulatory actions and responses taken by other federal agencies, state DOTs, and MPOs. *Id.* at 24,925.

### B. The Biden Administration's New Goals

25.     Within his first week in office, President Biden issued two executive orders aimed at establishing the environmental policies of his Administration. The first, signed on January 20, 2021, was Executive Order 13990, entitled "Protecting Public Health and the Environment and Restoring Science to Tackle the Climate Crisis" ("EO 13990"). The second, signed on January 27, 2021, was Executive Order 14008, entitled "Tackling the Climate Crisis at Home and Abroad" ("EO 14008"). EO 13990 was published in the Federal Register at 86 Fed. Reg. 7037 on January 25, 2021, while EO 14008 was published in the Federal Register at 86 Fed. Reg. 7619 on February 1, 2021.

26.     EO 13990 established a policy of the Biden Administration to reduce greenhouse gas emissions and directed all executive departments and agencies to "immediately review all existing regulations, orders, guidance documents, policies, and any other similar agency actions… promulgated, issued, or adopted" by the Trump Administration that would conflict with President Biden's policies. EO 13990, 86 Fed. Reg. at 7037. EO 14008 directed the whole of the Federal Government to "put the

United States on a path to achieve net-zero emissions, economy-wide, by no later than 2050." EO 14008, 86 Fed. Reg. at 7622. In April, President Biden announced an even more aggressive target. *FACT SHEET: President Biden Sets 2030 Greenhouse Gas Pollution Reduction Target Aimed at Creating Good-Paying Union Jobs and Securing U.S. Leadership on Clean Energy Technologies*, the White House, https://tinyurl.com/4ht5m4v4 (Apr. 22, 2021).

### C. The Proposed Rule

27.     Defendants issued the Proposed Rule on July 15, 2022. The stated purpose of the Proposed Rule was "to amend [FHWA's] regulations on national performance standards to establish a method for the measure and reporting of GHG emissions associated with transportation." Proposed Rule, 87 Fed. Reg. at 42,402.

28.     The Proposed Rule, like the 2017 Rule, contained a GHG measure to be imposed upon State DOT's and MPOs. Specifically, the Proposed Rule would require State DOTs and MPOs to "establish declining targets that reduce CO2 emissions generated by on-road mobile sources relative to a reference year defined as calendar year 2021…." *Id.* Additionally, the Proposed Rule would require "State DOTs and MPOs to set declining targets for reducing tailpipe $CO_2$ emissions on the [National Highway System]." *Id.* Finally, the Proposed Rule "would require State DOTs and MPOs to biennially report on their progress in meeting the targets and require FHWA to assess significant progress toward achieving the targets." *Id.* at 42,401.

29.    Unlike the 2017 Rule, the Proposed Rule claimed to give State DOTs and MPOs the flexibility to establish their own targets. But though the Proposed Rule let State DOTs and MPOs choose emissions targets, it also required them to identify targets that met the Biden Administration's arbitrary emissions goals established through executive order. *See id.* at 42,412 ("FHWA is not proposing to prescribe what declining targets would look like in each State. However, the States should be able to demonstrate how their targets fit into a longer timeframe of emissions reductions that will reach the national GHG goals for 2030 and 2050.").

30.    DOT cited 23 U.S.C. § 150(c)(3) as the claimed basis for its authority to promulgate the Proposed Rule. *Id.* at 42,407. As it did with the 2017 Rule, DOT acknowledged that the statute is silent as to the definition of "performance" and stated that it was interpreting the term "to include… environmental performance, an interpretation that is consistent with the goals established under 23 U.S.C. 150(b)." *Id.* DOT also identified numerous statutes that, according to DOT, supported its interpretation. *See id.* at 42,408–09.

31.    Recognizing that it was reversing course yet again, DOT addressed the cost-benefit analysis and duplicative measures identified by the 2018 Rule. First, DOT stated that the Proposed Rule "would create environmental sustainability benefits by supporting more informed choices about transportation investments and other policies to help achieve net-zero emissions economy-wide by 2050." *Id.* at 42,410. DOT also re-evaluated the costs of compliance with the Proposed Rule and "estimated total 10-year

costs of $11,022,835 at a 7% discount rate and $12,887,491 at a 3% discount rate." *Id.* at 42,411. Second, the DOT explained that it found "relatively few State DOTs are currently addressing GHG emissions, and even fewer are using performance measures," and that the Proposed Rule would "provide State DOTs with valuable information that is not already covered by other Federal agencies." *Id.* at 42,411–12.

32.     DOT solicited comments on a variety of issues, including how FHWA should structure improving targets for emission reductions and associated reporting and significant progress requirements, and whether there were any other ways the Proposed Rule could be implemented to better support emissions reductions to achieve national emissions policies. Final Rule, 88 Fed. Reg. at 85,373.

**D. Texas criticized the Proposed Rule in submitted comments.**

33.     On October 13, 2022, the State, through Ken Paxton, its Attorney General, submitted a comment letter in response to the Proposed Rule. Exhibit 3.

34.     Texas's comment identified three fundamental flaws with the Proposed Rule. First, the State asserted that "[t]here is no statutory authority allowing the FHWA to establish a greenhouse gas measure." Exh. 3 at 5. Specifically, the State argued that FHWA's interpretation of the relevant statutes "ignores the actual statutory language" in a manner that would enable FHWA "to promulgate measures it found convenient, as long as the FHWA could shoehorn the measure into a nebulous, all-encompassing definition of 'performance.'" *Id.* at 5–6. The State further listed each statute that FHWA

relied upon for authority and explained why no statute provides such power to the agency to promulgate the Proposed Rule. *Id.* at 7–10.

35.     Second, Texas asserted that "FHWA does not even attempt to justify its imposition of a requirement of net-zero emissions by 2050." *Id.* at 10. Specifically, the State argued that, despite identifying it lacks the authority to approve or reject State DOT emission targets, FHWA impermissibly mandates a net-zero emission target by 2050 and that such an imposition may result in ever-increasing restrictions that would ultimately be impossible to achieve. *Id.* at 10–11.

36.     Finally, the State asserted that "FHWA, MPOs, and State DOTs have no experience in environmental policymaking." *Id.* at 11. Specifically, the State correctly urged that environmental policy making falls outside of the administrative authority granted to such agencies because "administrative agencies' powers are restricted to the realm of their expertise." *Id.*

37.     TxDOT submitted its comments to the DOT on October 12, 2022. **Exhibit 4**.

38.     TxDOT's comments addressed a plethora of deficiencies with the Proposed Rule including lack of administrative authority, vagueness, impossibility, and unforeseen and unequal impacts. Specifically, among other issues, TxDOT asserted the following arguments:

- The Proposed Rule constitutes impermissible overreach because Congress has not authorized FHWA to establish a $CO_2$ performance measure for the National Highway System. Exh. 4 at 2.

- Even if Congress had called for a CO2 performance measure, it would be up to the States to establish their own targets, and the Proposed Rule does not allow for that. *Id.* at 4.

- FHWA should clarify whether State DOTs' and MPOs' declining targets for reducing tailpipe CO2 emissions on the National Highway System must demonstrate 50-52% reduction in on-road CO2 emissions by 2030 and net-zero on-road emissions by 2050. *Id.* at 4.

- FHWA failed to consider the overall practicability of the Proposed Rule and, as such, the rulemaking is arbitrary and capricious. *Id.* at 5.

- FHWA must prepare an environmental impact statement and a regulatory impact analysis that takes a hard look what is needed for the National Highway System to achieve the stated emissions goals by 2030 and 2050, or even year-over-year reductions. *Id.* at 11.

- Congress has not authorized funding for the GHG Measure, and as such the Proposed Rule would constitute an unfunded mandate by Congress *Id.* at 14.

- The economic impacts, including the Proposed Rule's impact on the movement of goods and annual impact on the national economy, were not properly considered. *Id.* at 14–15.

- Requiring all states to meet the same CO2 reduction goals for the National Highway System will have substantially different impacts on some states compared to others. *Id.* at 15.

39. The State also joined comment letters submitted by the Attorneys General of Oklahoma and Kentucky, which both similarly contained comments stating that DOT lacked the authority to promulgate the Proposed Rule and violated the APA by relying on factors not prescribed by Congress, among other things. *See* Exhs. 5 and 6.

**E. DOT still claimed authority to implement the Final Rule.**

40. When the DOT issued the Final Rule on December 7, 2023, it announced that the "GHG measure established in this rule is the same as the measure proposed in

the NPRM, which is the percent change in on-road tailpipe $CO_2$ emissions on the National Highway System relative to the reference year." Final Rule, 88 Fed. Reg. at 85,364. In other words, despite the deep concerns voiced by the State, TxDOT, and others, DOT doubled down on its authority to require a GHG Measure that impermissibly regulates $CO_2$ emissions.

41.     Although DOT removed the arbitrary requirements that emissions targets must align with executive policy, DOT still mandated that the targets be declining. DOT also changed the timelines for reporting and the reference year; added a severability clause absent in the Proposed Rule; and that significant progress determinations will require a GHG metric and GHG Measure; and made other minor technical changes. *Id.* at 85,371–73.

**F. The Final Rule harms Texas and TxDOT.**

42.     The Final Rule harms Plaintiffs because it expands federal regulation beyond what is authorized by statute. Because Texas is the "the object of" the Final Rule's requirements, "'there can be 'little question' that the rule [injures] the States." *W. Virginia v. EPA*, 142 S. Ct. 2587, 2606 (2022) (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561-62).

43.     The Final Rule requires TxDOT to establish initial declining $CO_2$ targets for the GHG Measure and report them to the DOT by February 1, 2024. 88 Fed. Reg. 85,372. TxDOT will have to submit biennial reporting and the DOT will perform a significant progress determination on those targets. *Id.* If significant progress is not

achieved, then TxDOT will have to document actions it will take to achieve that target in the next biennial report. 88 Fed. Reg. 85,378; *see* 23 C.F.R. 490.507(b). Not even considering the cost of actions necessary to achieve significant progress towards the targets, the DOT estimates the Final Rule will cost $10.8 million, discounted 7%, and $12.7 million discounted at 3%, over a ten-year period.

44.     Although the DOT removed language that the established targets need to be as stringent as in the Proposed Rule for net-zero emissions by 2050, the Final Rule still requires TxDOT to establish declining targets and monitor and report progress towards the targets even though the DOT lacks statutory authority.

45.     Moreover, the intent behind the Final Rule remains the same as in the Proposed Rule to align with executive policies to reduce GHG emissions economywide no later than 2050. 88 Fed. Reg. 85,371. For Texas, to achieve declining targets year over year would require substantial changes to how the citizens of Texas use the Interstate and National Highway System and would drastically impact the economy because Texas has major national and international ports and distribution centers. *See* Exh. 3, 6.

## CLAIMS FOR RELIEF

**Claim I:     The Final Rule exceeds DOT' statutory authority, in violation of the APA.**

46.     Plaintiffs re-allege and incorporate by reference the facts and allegations set forth in all preceding paragraphs as if set forth fully herein.

47.    Under the APA, a final agency action may be held unlawful and set aside if it is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right." 5 U.S.C. § 706(2)(C).

48.    DOT relies upon 23 U.S.C. § 150(c)(3) as the statutory authority to promulgate the Final Rule. However, DOT is limited to promulgating only measures described by subsection (c). 23 U.S.C. § 150(c)(2)(C). The relevant statute provides that FHWA, in administering the NHPP, shall establish "measures for States to use to assess the performance of" the Interstate System and the National Highway System. *Id.* § 150(c)(3)(A)(ii)(IV) and (V). The NHPP limits funding only to those projects identified by statute; however, no eligible project relates to the Final Rule's GHG measure. *See id.* § 119(d)(2).

49.    DOT further bases its authority to promulgate the Final Rule on a strained reading of "performance" as used in 23 U.S.C. § 150(c). But the term is undefined and thus cannot be used to expand FHWA's regulatory authority. *See W. Virginia v. EPA*, 597 U.S. ---, 142 S. Ct. 2587, 2609 (2022) ("Extraordinary grants of regulatory authority are rarely accomplished through modest words, vague terms, or subtle devices."). Instead, DOT "must point to 'clear congressional authorization' for the power it claims." *Id.* (quoting *Util. Air Regulatory Group v. EPA*, 573 U.S. 302, 324 (2014)).

50.    Moreover, to the extent Congress has authorized 23 U.S.C. § 150(c) to permit a performance measure related to on-road mobile source emissions, it did so through the limited authority under the Congestion Mitigation and Air Quality (CMAQ)

Program. 23 U.S.C. § 150(c)(5). DOT may establish measures to carry out the CMAQ Program; however, this Program is limited to only ozone, carbon monoxide, or particulate matter, not $CO_2$ or GHGs. *See* 23 U.S.C. § 149.

51.     Because the Final Rule is "in excess of statutory jurisdiction, authority, or limitations, or short of statutory right," it must be held unlawful and be set aside. 5 U.S.C. § 706(2)(C).

**Claim II:     The Final Rule is arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law, in violation of the APA.**

52.     Plaintiffs re-allege and incorporate by reference the facts and allegations set forth in all preceding paragraphs as if set forth fully herein.

53.     Under the APA, a final agency action may be held unlawful and set aside if it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). This means an agency cannot rely on "factors which Congress has not intended it to consider" and the agency "must examine the relevant data and articulate a satisfactory explanation for its action." *Motor Vehicle Mfrs. Ass'n of the US*, 463 U.S. at 43; *see FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009).

54.     The Final Rule requires State DOTs and MPOs "to establish declining targets for reducing $CO_2$ emissions generated by on-road mobile sources." Final Rule, 88 Fed. Reg. at 85,364. While DOT claims that the Final Rule is no longer tied to the Biden Administration's long term emission reductions goals, the Final Rule still mandates that any targets must be declining. Moreover, DOT acknowledges the GHG

Measure aligns with those executive policies and supports reaching net-zero by 2050 economy wide. 88 Fed. Reg. 85,365. Congress has not authorized it to consider climate change for the purposes of implementing performance measures. Further, if any federal agency may regulate greenhouse gas emissions, that power has been delegated to the Environmental Protection Agency.

55.    The DOT also failed to properly estimate the costs associated with the Final Rule. As identified by TxDOT in its comment to the Proposed Rule, the DOT's Regulatory Impact Analysis (RIA) only evaluates the costs from the perspective of performance reporting and not from the costs for action necessary to achieve any declining target. *See* Exh. 6 at 11-13. In response, the DOT summarily dismissed these concerns and "determined the RIA cost estimates should be primarily unchanged" because the DOT is not requiring specific declining targets or mandating penalties for failing to meet the targets. 88 Fed. Reg. 85,388.

56.    However, if significant progress is not made in achieving the established targets, the DOT will require TxDOT to document the actions it will take to achieve the targets in a biennial report. 88 Fed. Reg. 85,378. It is the costs of these actions to achieve significant progress that are not accounted for in the RIA. Accordingly, the Final Rule is arbitrary and capricious because the DOT failed to take these costs into account.

57.    Because the Final Rule is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law," it must be held unlawful and be set aside. 5 U.S.C. § 706(2)(A).

**Claim III:   The Final Rule violates the Spending Clause.**

58.    Plaintiffs re-allege and incorporate by reference the facts and allegations set forth in all preceding paragraphs as if set forth fully herein.

59.    Under the APA, a final agency action may be held unlawful and set aside if it is "contrary to constitutional right, power, privilege, or immunity." 5 U.S.C. § 706(2)(B).

60.    When Congress exercises its Spending Clause power against the States, the principles of federalism require the conditions attached to federal funds must be clearly understood from the language of the law itself. *Arlington Cent. Sch. Bd. of Educ. v. Murphy*, 548 U.S. 291, 296 (2006). "States cannot knowingly accept conditions of which they are 'unaware' or which they are 'unable to ascertain.'" *Id.* (quoting *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 17 (1981). Further, the Spending Clause empowers Congress alone with the power of the purse, not the Executive. *Tex. Educ. Agency v. U.S. Dep't of Educ.*, 992 F.3d 350, 362 (5th Cir. 2021). An executive agency cannot impose conditions to receive federal funds that were not clear from the law Congress enacted. *Id.*

61.    As part of its Spending Clause power, Congress apportions federal funds among the States, including Texas, to implement the NHPP. *See* 23 U.S.C. § 104.

21

Accordingly, any conditions required by the DOT through regulations to receive those funds must be clear from the underlying statute to conform with the Spending Clause and principles of federalism. The Final Rule, however, impermissibly restricts the use of those federal funds by requiring TxDOT to implement the GHG Measure, which is not clearly ascertainable in 23 U.S.C. § 150(c)(3).

62.    Because the Final Rule is "contrary to constitutional right, power, privilege, or immunity," it must be held unlawful and be set aside. 5 U.S.C. § 706(2)(B).

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs respectfully request that the Court:

(1) adjudge and declare that the rulemaking titled *National Performance Management Measures; Assessing Performance of the National Highway System, Greenhouse Gas Emissions Measure* is unlawful because it is inconsistent with, and in excess of, DOT's authority;

(2) adjudge and declare that the final rule is arbitrary, capricious, an abuse of discretion, and not in accordance with the law, and otherwise contrary to constitutional rights and powers;

(3) vacate the Final Rule;

(4) award Plaintiffs their reasonable fees, costs, expenses, and disbursements, including attorney's fees, associated with this litigation; and

(5) grant Plaintiffs such additional and further relief as the Court may deem just, proper, and necessary.

Dated:   December 19, 2023                    Respectfully submitted,

                                              KEN PAXTON
                                              Attorney General of Texas

                                              BRENT WEBSTER
                                              First Assistant Attorney General

                                              GRANT DORFMAN
                                              Deputy First Assistant Attorney General

                                              JAMES LLOYD
                                              Deputy Attorney General for Civil Litigation

                                              KELLIE E. BILLINGS-RAY
                                              Chief, Environmental Protection Division

                                              */s/ Logan Harrell*
                                              LOGAN HARRELL
                                              Assistant Attorney General
                                              State Bar No. 24106054
                                              Logan.Harrell@oag.texas.gov

                                              WESLEY S. WILLIAMS
                                              Assistant Attorney General
                                              State Bar No. 24108009
                                              Wesley.Williams@oag.texas.gov

                                              OFFICE OF THE ATTORNEY GENERAL
                                              ENVIRONMENTAL PROTECTION DIVISION
                                              P.O. Box 12548, MC-066
                                              Austin, Texas 78711-2548
                                              (512) 463-2012 | Fax: (512) 320-0911

                                              **COUNSEL FOR THE STATE OF TEXAS AND
                                              THE TEXAS DEPARTMENT OF
                                              TRANSPORTATION**