# EXHIBIT 5



Commonwealth of Kentucky
Office of the Attorney General

Daniel Cameron
Attorney General

Capitol Bldg., Suite 118
700 Capital Avenue
Frankfort, KY 40601
(502) 696-5300
Fax: (502) 564-2894

October 13, 2022

*Via Federal eRulemaking Portal*
Federal Highway Administration
U.S. Department of Transportation
1200 New Jersey Avenue SE
Washington, DC 20590

**Re: National Performance Management Measures; Assessing Performance of the National Highway System, Greenhouse Gas Emissions Measure (Docket ID No. FHWA-2021-0004)**

On behalf of the Attorneys General for the Commonwealth of Kentucky and the States of Alabama, Alaska, Arkansas, Florida, Georgia, Indiana, Kansas, Louisiana, Mississippi, Montana, Nebraska, Oklahoma, South Carolina, South Dakota, Texas, Utah, Virginia, West Virginia, and Wyoming, we respectfully submit the following comments in response to the Federal Highway Administration's ("FHWA" or "Agency") proposed rule establishing a Greenhouse Gas ("GHG") Emissions Measure.[1]

### I.   Introduction

Through this proposed rule, which FHWA refers to as the "proposed GHG measure," FHWA intends to require all States that have National Highway System mileage within their geographic boundaries—which includes all fifty States, the District of Columbia, and Puerto Rico[2]—to set targets to reduce tailpipe $CO_2$

---

[1] *National Performance Management Measures; Assessing Performance of the National Highway System, Greenhouse Gas Emissions Measure*, 87 Fed. Reg. 135 (proposed Jul. 15, 2022), *available at* https://www.govinfo.gov/content/pkg/FR-2022-07-15/pdf/2022-14679.pdf [hereinafter "Proposed GHG Measure"].

[2] *Id.* at 42402; *see* U.S. Department of Transportation Federal Highway Administration (Oct. 1, 2020), https://www.fhwa.dot.gov/planning/national_highway_system/nhs.pdf.

emissions down to "net-zero" by 2050.[3] The States would be required to report their progress in meeting the targets in biennial reports.

This wide-sweeping rule, which is similar to an earlier since-repealed rule, is being revived not because Congress has provided clarity on the issues the Agency flagged in 2018 when it repealed the rule,[4] but because the Department of Transportation considers it "essential" to achieving the "Administration's target of net-zero emissions, economy-wide, by 2050"[5] and believes it "would help the United States confront the increasingly urgent climate crisis."[6] But Congress has not given FHWA authority to regulate in this way. And even if it had, the States cannot be compelled to administer federal regulatory programs and certainly cannot be mandated to further Executive policy wishes. FHWA should rescind this proposed rule.

## II. Background

This is not FHWA's first attempt at imposing such a measure. The 2012 Moving Ahead for Progress in the 21st Century Act required State Departments of Transportation ("DOT") and metropolitan planning organizations ("MPO") to report their "progress in achieving performance targets" set by the State to address certain assessment measures established by FHWA, including "on-road mobile source emissions." 23 U.S.C. § 150. Relying on that requirement, FHWA issued a rule in 2017 requiring States to make percentage reductions of on-road $CO_2$ emissions.[7]

One year later, the Agency repealed the measure.[8] FHWA identified the measure as being "potentially duplicative of existing efforts in some States"[9] and believed it imposed "unnecessary burdens on State DOTs and MPOs that were not contemplated by Congress."[10] Further, it found interpreting the term "performance" as including "environmental performance" to be "a strained reading of the statutory

---

[3] Proposed GHG Measure, *supra* note 1, at 42402.
[4] *National Performance Management Measures; Assessing Performance of the National Highway System, Freight Movement on the Interstate System, and Congestion Mitigation and Air Quality Improvement Program*, 83 Fed. Reg. 105 at 24922 (May. 31, 2018), *available at* https://www.govinfo.gov/content/pkg/FR-2018-05-31/pdf/2018-11652.pdf [hereinafter "2018 Repeal"].
[5] Proposed GHG Measure, *supra* note 1, at 42402–42403.
[6] *Id*. at 42402.
[7] *National Performance Management Measures; Assessing Performance of the National Highway System, Freight Movement on the Interstate System, and Congestion Mitigation and Air Quality Improvement Program*, 82 Fed. Reg. 11 at 6002 (Jan. 18, 2017), *available at* https://www.govinfo.gov/content/pkg/FR-2017-01-18/pdf/2017-00681.pdf.
[8] 2018 Repeal, *supra* note 4.
[9] *Id*. at 24922.
[10] *Id*. A group of U.S. Senators have asserted that the proposed GHG measure similarly is "overly burdensome on state DOTs and MPOs." Letter in Response to FHWA Proposed Rule, (July 28, 2022), *available at* https://www.regulations.gov/comment/FHWA-2021-0004-0007 [hereinafter "Republican Senator Comment"].

language in section 150, and one that did not fully consider the limitations imposed by the statute itself and by other relevant considerations."[11]

Now, FHWA proposes to once again impose a GHG measure on the States because it believes "the repeal conflicts with th[e] objectives" set out in the President's Executive Orders relating to climate change.[12] And this time, the proposed GHG measure delineates targets the States must meet, requiring States to reduce $CO_2$ emissions to meet the Administration's economy-wide goal of having net-zero emissions by 2050.[13] The below-signed Attorneys General believe that, while the proposed GHG measure may be aligned with the Biden Administration's climate change priorities, it is seriously out-of-step with FHWA's statutory and constitutional authority.

### III. Analysis

#### A. Neither prior existing law nor the new Infrastructure Investment and Jobs Act authorize FHWA to impose the proposed GHG measure.

According to President Biden, there is a "climate crisis," and FHWA proposes the GHG measure as a means to address it.[14] But "[a]gencies have only those powers given to them by Congress, and enabling legislation is generally not an open book to which the agency may add pages and change the plot line." *West Virginia v. EPA*, 142 S. Ct. 2587, 2609 (2022) (cleaned up). The proposed GHG measure would be a serious revision of what Congress has written, and Congress has not given FHWA such editorial power.

FHWA asserts that because "23 U.S.C. [§] 150(c) directs FHWA to establish performance measures that the State DOTs can use to assess performance of the Interstate and non-Interstate [National Highway System]," the agency has authority to require State DOTs to establish targets to reduce $CO_2$ emissions "that align with the Administration's target of net-zero emissions."[15] It also asserts that it is "implementing Congress's express direction regarding [National Highway Performance Program] goals" in light of the Infrastructure Investment and Jobs Act ("IIJA"), which amended one of the purposes of the National Highway Performance Program to include providing "support for activities to increase the resiliency of the

---

[11]  2018 Repeal, *supra* note 4, at 24923.
[12]  Proposed GHG Measure, *supra* note 1, at 42403.
[13]  *Id*. at 42402.
[14]  *See id*. at 42401, 42406–42407 (citing several Executive Orders, including Exec. Order No. 13990, "Protecting Public Health and the Environment and Restoring Science to Tackle the Climate Crisis," and Exec. Order No. 14008, "Tackling the Climate Crisis at Home and Abroad").
[15]  *Id*. at 42402.

National Highway System to mitigate the cost of damages from sea level rise, extreme weather events, flooding, wildfires, or other natural disasters."[16]

But when interpreting a statute "that confers authority upon an administrative agency, th[e] inquiry must be 'shaped, at least in some measure, by . . .' whether Congress in fact meant to confer the power the agency has asserted." *West Virginia v. EPA*, 142 S. Ct. at 2607–08 (quoting *FDA v. Brown & Williamson Tobacco Corp.*, 529 U.S. 120, 159 (2000)). Here, it is clear that Congress did not intend to confer power on FHWA to mandate that States meet Executive-established $CO_2$ emissions standards.

First, 23 U.S.C. § 150 does not give FHWA authority to mandate $CO_2$ emissions targets for States. In fact, according to the statute, it is the States that set the performance targets. 23 U.S.C. § 150(d) says, "each State shall set performance targets," while 23 U.S.C. § 150(c)(5) directs the Secretary to "establish measures for States to use to *assess* . . . on-road source emissions." (emphasis added). This language does not authorize the Secretary to establish the emissions targets to be met, and FHWA seems to recognize this because it claims the proposed GHG measure does "not mandate the level of the targets."[17] But, contrary to its claim, FHWA does exactly that in the proposed rule. In FHWA's own words, the proposed GHG measure "would *require* State DOTs and MPOs that have National Highway System mileage within their . . . boundaries . . . to establish declining $CO_2$ emissions targets to reduce $CO_2$ emissions generated by on-road mobile sources . . . that align with the Administration's net-zero targets."[18] This language used by FHWA is mandatory[19]— and that means it is beyond the power Congress conferred.

Second, the newly enacted IIJA did not change the Agency's regulatory authority. As made explicit in a comment to this proposed rule by a group of U.S. Senators, the "IIJA established new programs to *incentivize* and *reward* state DOTs and MPOs for implementing emissions reduction strategies;" it did not authorize FHWA to *mandate* GHG performance targets the States would be required to meet.[20]

---

[16] *Id*. at 42408 (citing Infrastructure Investment and Jobs Act, Pub. L. No. 117-58, §§ 11105, 135 Stat. 429 (2021)).

[17] Proposed GHG Measure, *supra* note 1, at 42401.

[18] *Id*. at 42401 (emphasis added); *see also id*. at 42413 ("Proposed new § 490.105(e)(10) would require declining targets for reductions in tailpipe $CO_2$ emissions on the [National Highway System] that align with the 2030 and net-zero by 2050 emissions reduction targets discussed earlier."). In another place, it says, "State DOTs and MPOs would have the flexibility to set targets that work for their respective climate change policies and other policy priorities, *so long as* they are in line with the net-zero goals by 2050 set forth in this rule." *Id*. at 42402 (emphasis added).

[19] And the way an agency talks about the rule matters. *See West Virginia v. EPA*, 142 S. Ct. at 2611–12 (finding the EPA was asserting an unprecedented and overly broad power by noting that the EPA itself recognized this in how it described the rule).

[20] Republican Senator Comment, *supra* note 10 (emphases added); *see* Infrastructure Investment and Jobs Act, Pub. L. No. 117-58, §§ 50201-222, 135 Stat. 429 (2021) *available at https://www.congress.gov/117/plaws/publ58/PLAW-117publ58.pdf* [hereinafter "IIJA"].

Indeed, according to Republican Senate Leader Mitch McConnell and Ranking Member of the Senate Committee on Environment and Public Works Shelley Moore Capito, "[n]othing in the IIJA provides FHWA with the authority to dictate how states should use their federal formula funding."[21] And, as many comments to this proposed rule have noted, the Georgetown Climate Center's analysis of the IIJA was that Congress had not explicitly directed it to be used to address climate change:

> IIJA could be an important part of the U.S. response to climate change. Or it could lead to more greenhouse gas pollution than the trajectory we are currently on. Where the actual outcome falls within that range will depend on the decisions made by state, federal, and local governments about how to spend the money made available by IIJA.[22]

But the Agency need not rely on these assertions to know that Congress did not use the IIJA to expand its authority to include setting national emissions reduction targets that would be imposed on the States; it can simply look at the text and the legislative history. Nothing in the IIJA gives FHWA the authority to set $CO_2$ emissions targets for the States or directs that funding can be limited in this manner. And even the more climate-change focused version that was initially passed by the House did not extend FHWA's authority as broadly as the Agency now claims. The House version had a section devoted to carbon pollution reduction, in which it made funds available for States to set emissions goals and allowed the Secretary to shift federal funding for the fifteen states that performed the worst in meeting their goals.[23] In contrast, the codified version of the IIJA did not require the Secretary to evaluate the progress of the States in meeting emissions goals or condition funding on meeting any such goals.[24] FHWA is attempting to impose what Congress decided not to impose—and, indeed, to go even further because even the House version did not require the States to align their targets with a national, Executive-set target.

Accordingly, neither prior existing law nor the new IIJA provides FHWA with the authority to mandate that State DOTs and MPOs set emissions targets that align with the Administration's net-zero by 2050 target.

---

[21] Letter from Senator McConnell and Senator Capito to State Governors (Feb. 9, 2022), *available at* www.epw.senate.gov/public/_cache/files/8/c/8c3b1b65-550b-493b-b6cd-33b108e53eac/B44AC4860614C4E3FD4712AAB8652E9C.2022-02-07-general-iija-governors-letter.pdf.

[22] *Issue Brief: Estimate the Greenhouse Gas Impact of Federal Infrastructure Investments in the IIJA*, GEORGETOWN CLIMATE CENTER (Dec. 16, 2021), https://www.georgetownclimate.org/articles/federal-infrastructure-investment-analysis.html.

[23] H.R. 3684, 117th Congress (engrossed in House Jul. 1, 2021), at § 1213, *available at* https://www.congress.gov/bill/117th-congress/house-bill/3684/text/eh [hereinafter "House Version"]; *see also* Michael Laris, *Infrastructure Proposal Creates a Program to Cut Emissions. Critics Say It's Missing Major Pieces*, THE WASHINGTON POST (Aug. 3, 2021), https://www.washingtonpost.com/transportation/2021/08/03/carbon-emissions-reduction-infrastructure/.

[24] IIJA, *supra* note 20, at § 11403.

### B. Congress did not authorize FHWA to address climate change through action like the proposed GHG measure.

Furthermore, allowing FHWA to impose the proposed GHG measure would result in federal regulation of a vast portion of the American economy.[25] For that, Congress has to "speak clearly," *see Util. Air. Regulatory Grp. v. EPA*, 573 U.S. 302, 324 (2014), and it has not.

This becomes immediately evident in the Agency's discussion of whether the term "performance" includes "environmental performance." The Supreme Court has rejected expansive constructions of statutes if allowing the broader interpretation would mean relying on a "cryptic" delegation of authority. *Brown & Williamson*, 529 U.S. at 160. Indeed, the Court has said that "[e]xtraordinary grants of regulatory authority are rarely accomplished through 'modest words,' 'vague terms,' or 'subtle devices.'" *West Virginia v. EPA*, 142 S. Ct. at 2609 (cleaned up). But vague references are all the Agency cites.

According to FHWA, including "environmental performance" in the definition of "performance" "is consistent with the national goals established under 23 U.S.C. 150(b)."[26] That provision does indeed say that "[i]t is in the interest of the United States to focus the Federal-aid highway program on . . . environmental sustainability." 23 U.S.C. 150(b). But the provision of Section 150 that actually authorizes FHWA to establish performance measures says the Secretary "shall . . . limit performance measures *only* to those described in this subsection," and the subsection does not include a $CO_2$ measure. 23 U.S.C. § 150(c)(2)–(3) (emphasis added).

FHWA also relies on the IIJA's amendment to the purposes of the National Highway Performance Program.[27] But an interpretation of "performance" that includes "environmental performance" would be inconsistent with the statute.[28] Under 23 U.S.C. § 150(c)(3), the minimum standards and measures to be established are "for the purpose of carrying out section 119." Section 119 defines eligibility criteria for projects funded under the National Highway Performance Program and delineates the national goals that are relevant to the program: "infrastructure condition, safety, congestion reduction, system reliability, or freight movement on the National Highway System." 23 U.S.C. 119(d)(1). As the Agency noted in its repeal of

---

[25] *See e.g.*, Brad Plumer, *To Cut Emissions to Zero, U.S. Needs to Make Big Changes in Next 10 Years*, THE NEW YORK TIMES (Dec. 15, 2020), https://www.nytimes.com/2020/12/15/climate/america-next-decade-climate.html (discussing a Princeton study that identified several "drastic changes" the U.S. would need to make, including having 50% of all new cars sold after 2030 be battery-powered, switching over one quarter of homes from natural gas or oil heats to electric heat pumps, and shut down "virtually all of the 200 remaining coal-burning power plants" by 2030).

[26] Proposed GHG Measure, *supra* note 1, at 42407.

[27] *Id.*; IIJA, *supra* note 20, at § 11105 (amending 23 U.S.C. 119(b)(4)).

[28] *See* 2018 Repeal, *supra* note 4, at 24924.

the previous GHG measure, "these goals are consistent with an interpretation of 'performance' that focuses on the physical condition of the system and the efficiency of transportation operations across the system, they do not support FHWA's . . . broader interpretation of 'performance'[.]"[29]

Indeed, a review of the purpose added by the IIJA demonstrates it, too, is focused on the physical condition of the highway system. The new language makes it a purpose of the program to provide "support for activities to increase the resiliency of the National Highway System to mitigate the cost of damages from sea level rise, extreme weather events, flooding, wildfires, or other natural disasters."[30] This language does not authorize the Agency to support activities that attempt to *prevent* those natural disasters or climate change more generally, but instead to support "activities to *increase the resiliency* of the National Highway System to mitigate the cost of damages" from natural disasters. It is intended to address physical issues with our roads, not $CO_2$ emissions in the air.

A comparison of the House version and the final enacted version of the IIJA further demonstrates Congress' decision to not give FHWA expanded authority to address climate change. In the House version, the bill called for subsection (d) of 23 U.S.C. 119 to be amended by striking "or freight movement on the National Highway System" and inserting "freight movement, environmental sustainability, transportation system access, or combating climate change."[31] The final version makes no such change.[32] Similarly, there are a number of other places where the House version added language to focus on climate change but where such language was not included in the final enacted version of the IIJA.[33]

Moreover, while it is far from clear that Congress has delegated any authority to regulate $CO_2$ emissions, it would seem more plausible that such delegation has been given to the EPA and not to FHWA. Indeed, whether authorized or not, the EPA has already taken steps to curb greenhouse gases and specifically $CO_2$ from mobile sources.[34] FHWA asserts that the proposed GHG measure is not duplicative of the EPA's efforts because the mandatory reporting would produce data not already

---

[29] *Id*.
[30] Proposed GHG Measure, *supra* note 1, at 42408 (citing IIJA at § 11105).
[31] House Version, *supra* note 23, at § 1201.
[32] IIJA, *supra* note 20, at § 11105.
[33] *See, e.g.*, House Version, *supra* note 23, at § 1202 (amending 23 U.S.C. 134(i)(2) to add a climate change and resilience section requiring the transportation planning process to "assess strategies to reduce the climate change impacts of the surface transportation system and conduct a vulnerability assessment to identify opportunities to enhance the resilience of the surface transportation system and ensure the efficient use of Federal resources"); *see also id.* at § 1201 (amending 23 U.S.C. 119(e) by striking "analysis" and inserting "analyses, both of which shall take into consideration climate change adaptation and resilience").
[34] *See, e.g.,* Environmental Protection Agency, *Regulatory and Guidance Information by Topic: Air*, https://www.epa.gov/regulatory-information-topic/regulatory-and-guidance-information-topic-air (describing how the EPA has set vehicle standards).

collected by EPA or DOE.[35] But this ignores the reality that FHWA used mandatory language not just for reporting, but also for requiring State DOTs and MPOs to set targets that align with the Administration's emissions targets. This is clearly an attempt to use the proposed GHG measure to address climate change. Given the Supreme Court recently made clear in *West Virginia v. EPA* that even the EPA cannot use its existing authority to take unprecedented and unauthorized actions to address climate change, such action is clearly beyond the authority Congress has given FHWA.

Congress must speak more clearly before FHWA may assert it has authority to mandate that all of the States and Puerto Rico decrease on-road $CO_2$ emissions in furtherance of the Administration's emissions goals. FHWA cannot simply say it "has reexamined th[e] determination from the 2018 repeal final rule" to assert "FHWA has authority."[36, 37] Even if it were not immediately clear from the statute that regulating in this manner is beyond the scope of the Agency's authority—and the undersigned believe it is—the Agency's back and forth about the definition of "performance" is evidence that it is relying only on "vague terms" or "cryptic delegations." And that simply is insufficient for FHWA to claim authority over a major question such as this.

### C. The proposed GHG measure violates federalism principles.

American principles of federalism prohibit mandated action like the proposed GHG measure. "The Federal Government may not compel the States to enact or administer a federal regulatory program." *New York v. United States*, 505 U.S. 144, 188 (1992). This is because "the Constitution protects us from our own best intentions: It divides power among sovereigns and among branches of government precisely so that we may resist the temptation to concentrate power in one location as an expedient solution to the crisis of the day." *Id.* at 187. Therefore, even if Congress believed that the GHG measure was the best means of reducing $CO_2$ in order to address climate change, the States could not be directed to implement the policy choices of the federal government.[38] *See Printz v. United States*, 521 U.S. 898 (1997). This is why, in a comment on this proposed rule, a group of Republican U.S. Senators

---

[35] Proposed GHG Measure, *supra* note 1, at 42411–42412.

[36] Proposed GHG Measure, *supra* note 1, at 42408.

[37] Nor does it matter that the Agency identified "[s]cientific literature published since the 2018 GHG measure repeal [that] provides greater certainty on the impact of human activities on the earth's current and future climate, as well as the urgency of actions to reduce human GHG emissions," *id.* at 42405. Such literature may be used by the Agency to explain why the action should not be considered arbitrary, but an action without statutory authority is always arbitrary. *See Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43 (1983) (explaining that an agency rule is "arbitrary and capricious if the agency has relied on factors which Congress has not intended it to consider").

[38] The Constitution permits the Federal Government to hold out incentives to the States to encourage them to adopt a suggested regulatory scheme, *see, e.g., South Dakota v. Dole*, 483 U.S. 203 (1987), but the proposed rule says that it would "require" action by the States, Proposed GHG Measure, *supra* note 1, at 42402, 42413.

clarified that the "IIJA established new programs to *incentivize* and *reward* state DOTs and MPOs for implementing emissions reduction strategies."[39]

Yet, FHWA attempts to force States to implement the President's climate change policy. As discussed above, despite saying that the proposed GHG measure does "not mandate the level of the targets,"[40] FHWA sets explicit mandatory targets.[41] Indeed, the proposed GHG measure is explicitly imposed to further *executive* policy: "FHWA is proposing to require State DOTs and MPOs to set declining targets for reducing tailpipe $CO_2$ emissions on the [National Highway System] that align with the 2030 and 2050 targets set out in the Executive Orders[.]"[42] Regulatory action cannot be used in this manner. Just because the President believes that reducing on-road $CO_2$ emissions is key to addressing climate change, does not mean FHWA can compel States to administer a federal regulatory program.

Federalism is not just an abstract constitutional principle; it ensures States will be able to protect the very real interests of their citizens. This becomes particularly evident when confronted with a rule like this one, which disproportionately impacts states with more rural areas. On average, rural residents drive ten miles more per day than urban residents.[43] And States with higher average annual miles per driver tend to be more rural.[44] As a result, drivers in States with more rural areas like Kentucky[45] and many of the undersigned States will be more burdened by this rule. In the Agency's attempt to consolidate power to address a perceived crisis at the federal level, it fails to adequately consider the unique situation of each State. And that is why federalism prohibits action like the proposed GHG measure.

---

[39] Republican Senator Comment, *supra* note 10 (emphases added).
[40] Proposed GHG Measure, *supra* note 1, at 42401.
[41] *Id.*; *see also id.* at 42406 ("[T]he U.S. will target reducing emissions by 50 to 52 percent by 2030 compared to 2005 levels. . . . Additionally, FHWA is proposing to require State DOTs and MPOs to set declining targets for reducing tailpipe $CO_2$ emissions on the [National Highway System] that align with the 2030 and 2050 targets set out in the Executive Orders discussed previously in this section."); *id.* at 42413 ("Proposed new § 490.105(e)(10) would require declining targets for reductions in tailpipe $CO_2$ emissions on the NHS that align with the 2030 and net-zero by 2050 emissions targets[.]").
[42] Proposed GHG Measure, *supra* note 1, at 42406.
[43] *Fact #759: December 24, 2012 Rural vs. Urban Driving Differences*, DEPARTMENT OF ENERGY (Dec. 24, 2012), https://www.energy.gov/eere/vehicles/fact-759-december-24-2012-rural-vs-urban-driving-differences.
[44] *Average miles driven per year by Americans*, METROMILE (Sep. 13, 2021), https://www.metromile.com/blog/average-miles-driven-per-year-by-americans/.
[45] Janet Harrah, *Kentucky Metropolitan Areas Out-Perform Rural and Small Urban Areas*, THE COMMUNITY RESEARCH COLLABORATIVE BLOG, https://crcblog.typepad.com/crcblog/kentucky-metropolitan-areas-out-perform-rural-and-small-urban-areas.html#:~:text=Counties%20were%20designated%20as%20rural,remaining%2059%20are%20rural%20counties (noting that based on 2010 data, just under half of the counties in Kentucky were considered rural).

### D. The proposed GHG measure is arbitrary.

In addition to being outside its statutory and constitutional authority, the proposed GHG measure violates the Administrative Procedure Act. Executive agency action cannot be arbitrary or capricious. *See FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 513 (2009). This means that, *inter alia*, the agency cannot rely on "factors which Congress has not intended it to consider," and the agency must "examine the relevant data and articulate a satisfactory explanation for its action." *Motor Vehicle Mfrs. Ass'n of the U.S.,* 463 U.S. at 43. FHWA has violated both of these principles.

FHWA has said that it is proposing this rule to further the Executive's policy objectives for climate change, yet, as discussed above, Congress has not given it authority to address climate change.[46] By relying on climate change factors, FHWA has proposed an arbitrary action because agency action that relies on factors Congress has not authorized it to consider is arbitrary. *See id*.

Even if the proposed GHG measure were not *per se* arbitrary, FHWA also fails to articulate a satisfactory explanation for why it is imposing the GHG measure on the States. Agencies have significant leeway to exercise expert discretion, but when exercising it, they must justify the choices they make by providing the basis for exercising its expert discretion. *See Burlington Truck Lines, Inc. v. United States,* 371 U.S. 156, 167 (1962). And while "[a]n agency's view of what is in the public interest may change . . . [,] an agency changing its course must supply a reasoned analysis[.]" *Greater Boston Television Corp. v. FCC*, 444 F.2d 841, 852 (D.C. Cir. 1970); *see also Burlington*, 371 U.S. at 167 (noting that if an agency is not required to provide the reasoned analysis, it "can become a monster which rules with no practical limits on its discretion") (internal citation omitted).

The explanation given by FHWA for imposing a new version of the once-repealed GHG measure is that:

> In light of the Agency's policy emphasis on using its available authorities to confront worsening climate change—as well as the new facts identified in reports issued between 2018 and 2021 that expand our knowledge of the severe consequences of climate change—FHWA reconsidered its legal authority, reexamined the assumptions regarding potential costs and potential duplication that underlay the repeal of the 2017 measure, and proposed adopting a GHG performance measure.[47]

But this statement does not make the analysis reasoned.  First, even according to the descriptions given by FHWA, these reports are not specific to on-road $CO_2$ emissions;

---

[46]   *Infra* sections A and B.
[47]   Proposed GHG Measure, *supra* note 1, at 42405.

they simply address greenhouse gases generally. FHWA's summary of the IPCC Sixth Assessment Report from 2021 is that it says human activities have increased atmospheric GHG emissions, which have raised the average surface temperature, and there may be "evidence linking human production of GHG emissions to extreme events such as heatwaves, heavy precipitation, droughts, and hurricanes."[48] The 2018 reports discuss assertions that to limit global warming "would likely require decreasing global net anthropogenic $CO_2$ emissions[.]"[49] These general climate change reports are not sufficient justification for why FHWA needs to impose mandatory on-road $CO_2$ emissions targets for all of the States.

Second, the reexamination of the assumptions regarding potential costs and duplication of efforts is based on a difference in policy, not technical expertise. FHWA rejects the Agency's earlier conclusion that it "was not possible to predict, with any degree of certainty, the extent to which the influence effects of the GHG measure might result in actual changes in emissions levels" and says that it now "anticipates that this proposed rule would result in substantial benefits that are neither speculative nor uncertain."[50] Yet, in the *same paragraph*, FHWA says the "benefits are not easily quantifiable."[51] FHWA then goes on to say that the "proposed GHG measure aligns with the national goal of reducing $CO_2$ emissions 50 to 52 percent below 2005 levels by 2030 in support of the Paris Agreement."[52] This "national policy" that supports the Paris Agreement is part of an Executive policy; these are political choices, not exercises of technical expertise and discretion. And the numerous references to how the proposed GHG measure "aligns" with the Executive Orders establishing the net-zero targets[53] demonstrate the Agency is fully aware it is relying on Executive policy wishes. The failure to supply a reasoned analysis that provides a basis for exercising its technical discretion makes the proposed GHG measure arbitrary. Therefore, it must not be made final.

### IV. Conclusion

For the reasons set forth above, the Attorneys General for the Commonwealth of Kentucky and the States of Alabama, Alaska, Arkansas, Florida, Georgia, Indiana, Kansas, Louisiana, Mississippi, Montana, Nebraska, Oklahoma, South Carolina, South Dakota, Texas, Utah, Virginia, West Virginia, and Wyoming respectfully request that FHWA not make this proposed rule final. We look forward to your response.

---

[48] *Id.*
[49] *Id.* at 42405–42406.
[50] *Id.* at 42410.
[51] *Id.*; *see also id.* at 42404 ("The [regulatory impact analysis] discusses anticipated benefits of the rule qualitatively; they are not quantified because they are difficult to forecast and monetize.").
[52] *Id.* at 42411.
[53] *Id.* at 42401, 42402–42403, 42406.

Respectfully submitted,

DANIEL CAMERON
Attorney General of Kentucky

STEVE MARSHALL
Attorney General of Alabama

TREG R. TAYLOR
Attorney General of Alaska

LESLIE RUTLEDGE
Attorney General of Arkansas

ASHLEY MOODY
Attorney General of Florida

CHRIS M. CARR
Attorney General of Georgia

TODD ROKITA
Attorney General of Indiana

DEREK SCHMIDT
Attorney General of Kansas

JEFF LANDRY
Attorney General of Louisiana

LYNN FITCH
Attorney General of Mississippi

AUSTIN KNUDSEN
Attorney General of Montana

DOUGLAS J. PETERSON
Attorney General of Nebraska

JOHN M. O'CONNOR
Attorney General of Oklahoma

ALAN WILSON
Attorney General of South Carolina

MARK VARGO
Attorney General of South Dakota

KEN PAXTON
Attorney General of Texas

SEAN D. REYES
Attorney General of Utah

JASON MIYARES
Attorney General of Virginia

PATRICK MORRISEY
Attorney General of West Virginia

BRIDGET HILL
Attorney General of Wyoming