**FILED**
**February 22, 2024**
KAREN MITCHELL
CLERK, U.S. DISTRICT COURT

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
LUBBOCK DIVISION

| | | |
|---|---|---|
| STATE OF TEXAS, et al. | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| v. | § | No. 5:23-CV-304-H |
| | § | |
| UNITED STATES DEPARTMENT OF TRANSPORTATION, et al. | § § § | |
| | § | |
| Defendants. | § | |

**BRIEF OF *AMICI CURIAE* AMERICAN ROAD AND TRANSPORTATION BUILDERS ASSOCIATION AND ASSOCIATED GENERAL CONTRACTORS OF AMERICA, INC. IN SUPPORT OF THE PLAINTIFFS' MOTION FOR SUMMARY JUDGMENT**

The American Road and Transportation Builders Association and Associated General Contractors of America, Inc. submit this Brief of *Amici Curiae* in Support of the Plaintiffs' Motion for Summary Judgment.

## INTEREST OF *AMICI CURIAE*[1]

The American Road and Transportation Builders Association ("ARTBA") is made up of more than 8,000 member organizations in the transportation construction industry, including construction contractors, professional engineering firms, public agencies, federal, state, and local transportation administrators, heavy equipment manufacturers, and materials suppliers. The transportation construction industry generates more than $500 billion annually in U.S. economic activity. ARTBA's members are responsible for design and construction of vital public infrastructure projects such as highways, bridges, airports, railroads, and mass transit facilities, for which the Infrastructure Investment and Jobs Act is providing substantial investment. Additionally, ARTBA's membership includes state and local transportation agencies directly responsible for planning and funding highway projects. As such, ARTBA's members are directly impacted by emissions performance measures in the Emissions Rule.[2]

---

[1] Counsel for *amici curiae* states that no counsel for a party authored this brief in whole or in part, and no counsel or party made a monetary contribution intended to fund the preparation or submission of this brief.

[2] *National Performance Management Measures; Assessing Performance of the National Highway System, Greenhouse Gas Emissions Measure*, 88 Fed. Reg. 85364 (Dec. 7, 2023).

1

The Associated General Contractors of America, Inc. ("AGC of America") is a nationwide trade association of construction companies and related firms. AGC of America has more than 27,000 members, including more than 6,500 general contractors, over 9,000 specialty contractors, and many service and supply firms. AGC of America has 89 chapters, with at least one chapter serving each and every state, Puerto Rico, and Washington, D.C. AGC of America contractor members regularly bid for contracts with and perform work for state departments of transportation to build roads, highways, and bridges, among other forms of infrastructure.

*Amici* and their members have a direct and substantial interest in this case. The Emissions Rule imposes executive branch priorities in place of the carefully crafted, bipartisan legislative provisions that *amici* supported. It also threatens transportation improvements by imposing unplanned administrative costs on many state transportation agencies. *Amici* support the full spectrum of the Plaintiffs' arguments, but they will focus their efforts here on the relevant statutes and their legislative history and context.

## ARGUMENT

"Congress . . . does not . . . hide elephants in mouseholes." *Whitman v. Am. Trucking Ass'ns*, 531 U.S. 457, 468 (2001). If it had intended to grant the Agencies the significant power they claim, the statutory text would have done so clearly, or at

2

least the statute's text would have strongly signaled Congress's intent. Instead, here there is statutory silence at best and contradiction at worst—the exact opposite of what is required to support an agency's claim of authority. Worse yet, legislative history provides the U.S. Department of Transportation and the Federal Highway Administration (collectively, "the Agencies") no basis for supporting the Emissions Rule and instead makes pellucidly clear that Congress considered and rejected granting the Agencies the precise power they now claim. With all the tools of statutory interpretation arrayed squarely against the Agencies, the Court should grant the Plaintiffs' motion for summary judgment and set aside the Emissions Rule as unlawful.

**I.    Nothing in the plain text of the relevant statutes grants the Agencies the authority to regulate $CO_2$ emissions in this manner.**

In the Emissions Rule, the Agencies assert that 23 U.S.C. § 150(c)(3) grants them the authority to mandate that States establish declining $CO_2$ emissions targets for on-road mobile sources as a performance measure for the National Highway Performance Program ("NHPP"). Doc. 1-1, PageID.28-29. The Agencies also point to various parts of 23 U.S.C. §§ 101, 119, 134, and 135 as providing additional support for that claimed statutory authority. *Id.* at 71-72.

In fact, nothing in the plain text of those statutory provisions grants the Agencies any such power. 23 U.S.C. § 150(c)(3) outlines the performance measures for the NHPP. It is tightly focused on the physical infrastructure of the Nation's

3

highways, granting the Agencies the power to establish:

> (i)  minimum standards for States to use in developing and operating bridge and pavement management systems;
>
> (ii) measures for States to use to assess—
>
>> (I) the condition of pavements on the Interstate system;
>>
>> (II) the condition of pavements on the National Highway System (excluding the Interstate);
>>
>> (III) the condition of bridges on the National Highway System;
>>
>> (IV) the performance of the Interstate System; and
>>
>> (V) the performance of the National Highway System (excluding the Interstate System);
>
> (iii) minimum levels for the condition of pavement on the Interstate System, only for the purposes of carrying out section 119(f)(1); and
>
> (iv) the data elements that are necessary to collect and maintain standardized data to carry out a performance-based approach.

23 U.S.C. § 150(c)(3)(A). One searches that text in vain for any hint of the authority to impose the kind of far-reaching operational mandate contained in the Emissions Rule.

Perhaps the closest that can be found in 23 U.S.C. § 150 is a separate provision that lists among the Federal-aid highway program's goals: "Environmental sustainability.—To enhance the performance of the transportation system while protecting and enhancing the natural environment." *Id.* § 150(b)(6). But that identification of a general environmental goal is a far cry from a specific grant of authority to impose the Emissions Rule's declining $CO_2$ mandate on States as part

4

of the NHPP. And in any event, 23 U.S.C. § 150(c)(2)(C)'s command that the Agencies must "limit performance measures only to those described in this subsection" erodes the relevancy of this provision that is found in a different subsection.

Given that statutory restriction that mandates a tight focus on 23 U.S.C. § 150(c), it is difficult to see how the other provisions the Agencies invoked could salvage their argument. But for what it is worth, they too lack any textual grounding for the Agencies' claimed authority:

- 23 U.S.C. § 101(b)(3)(G) is a general declaration that "transportation should play a significant role in promoting economic growth, improving the environment, and sustaining the quality of life."

- 23 U.S.C. § 119(e)(2) provides that "[a] State asset management plan shall include strategies leading to a program of projects that would make progress toward achievement of the State targets for asset condition and performance of the National Highway System in accordance with section 150(d) and supporting the progress toward the achievement of the national goals identified in section 150(b)." *See also id.* § 119(e)(4)(D) (directing that a State asset management plan include "lifecycle cost and risk management analyses").

- 23 U.S.C. § 134 concerns the creation and operation of metropolitan planning organizations. A few general references to environmental concerns are scattered throughout its lengthy text. *See id.* § 134(a)(1) ("It is in the national interest to encourage and promote the safe and efficient management, operation, and development of surface transportation systems . . . while minimizing transportation-related fuel consumption and air pollution through metropolitan and statewide transportation planning processes identified in this chapter.''); *id.* § 134(c)(1) (requiring metropolitan planning organizations to "develop long-range transportation plans" to "accomplish the objectives in subsection (a)"); *id.* § 134(h)(1)(E) (requiring the consideration of projects that will "protect and enhance the

5

  environment, promote energy conservation, [and] improve the quality of life").

- 23 U.S.C. § 135 concerns statewide and nonmetropolitan transportation planning. It provides that the statewide planning process should include the consideration and implementation of projects that will "protect and enhance the environment, promote energy conservation, [and] improve the quality of life." *Id.* § 135(d)(1)(E). The section further specifies that the statewide planning process should "use . . . a performance-based approach to transportation decisionmaking to support the national goals described in section 150(b)." *Id.* § 135(d)(2)(A).

To be sure, these provisions indicate a level of concern about environmental issues, but nothing in their plain text grants the Agencies the weighty authority to impose declining $CO_2$ targets on States like they did in the Emissions Rule.

**II. Looking behind the statutory text into the legislative history and context only further confirms that the Agencies lack this authority.**

  The Court need not proceed further given the unambiguous absence of any statutory authority for the Emissions Rule. *See Nat'l Ass'n of Mfrs. v. Dep't of Def.*, 583 U.S. 109, 127 (2018) ("Because the plain language of [the statute] is 'unambiguous,' 'our inquiry begins with the statutory text, and ends there as well.'" (quoting *BedRoc Ltd., LLC v. United States,* 541 U.S. 176, 183 (2004) (plurality opinion)). But if the Court were to look beyond the text to the legislative history and broader context, that would only further confirm the Agencies' lack of authority.

  Congress first established the NHPP and its accompanying performance measurement provisions in 23 U.S.C. § 150(c) in the Moving Ahead for Progress in the 21st Century Act, Pub. L. 112-141 (July 6, 2012) ("MAP-21"), and then

6

continued them in both the Fixing America's Surface Transportation Act, Pub. L. 114-94 (Dec. 4, 2015), and the Infrastructure Investment and Jobs Act, Pub. L. 117-58 (Nov. 15, 2021) ("IIJA"). As reflected in the statutory text discussed above—which has not changed since its creation in MAP-21—none of those legislative efforts contains any authorization for the Agencies to include declining $CO_2$ targets as part of the NHPP's performance measures. That was no accident. All three acts were the product of bipartisan compromise, and there simply was not bipartisan support for granting the Agencies that sweeping new power.

Nowhere is that more apparent than in the IIJA. The original House bill would have granted the Agencies something close to the power they now claim. Specifically, it would have amended 23 U.S.C. § 150(c) by adding the following:

> (7) Greenhouse gas emissions.—The Secretary shall establish, in consultation with the Administrator of the Environmental Protection Agency, measures for States to use to assess—
>
>> (A) carbon dioxide emissions per capita on public roads;
>>
>> (B) carbon dioxide emissions using different parameters than described in subparagraph (A) that the Secretary determines to be appropriate; and
>>
>> (C) any other greenhouse gas emissions on public roads that the Secretary determines to be appropriate.

INVEST in America Act, H.R. 3684, 117th Cong. § 1403 (2021) (as introduced in the House).[3] The original Senate bill introduced in committee included a similar

---

[3] https://www.congress.gov/bill/117th-congress/house-bill/3684/text/eh

...

provision:

> (7) Greenhouse Gas Emissions.—
>
> > (A) Development of Data Elements—
> >
> > > (i) In general.—Not later than 1 year after the date of enactment of the Surface Transportation Reauthorization Act of 2021, the Secretary shall, in consultation with the Administrator of the Environmental Protection Agency, promulgate a rulemaking that establishes the data elements necessary for States to estimate carbon dioxide emissions from on-road highway sources.
> > >
> > > (ii) Administration.—In carrying out clause (i), the Secretary shall comply with subparagraphs (A) and (B) of paragraph (2).
> >
> > (B) Development of Performance Measures.—
> >
> > > (i) In general.—Not later than 1 year after the date on which the Secretary promulgates the rulemaking required under subparagraph (A)(i), the Secretary shall, in consultation with State departments of transportation, metropolitan planning organizations, and other stake holders, promulgate a rulemaking that establishes measures for States to support the reduction in carbon dioxide emissions from on-road highway sources.
> > >
> > > (ii) Administration.—In carrying out clause (i), the Secretary shall comply with paragraph (2).

Surface Transportation Reauthorization Act of 2021, S. 1931, 117th Cong. § 1205 (2021) (as introduced in the Senate Committee on Environment and Public Works).[4]

---

[4] https://www.epw.senate.gov/public/_cache/files/c/8/c8655fed-8f7c-457b-a010-3e028bc49b63/6636AFC54CEFBECD631118AED3415CB1.stra-final-bill-text-5-21.pdf

Had either of those amendments made it through to the final bill, then the Emissions Rule would have found itself on firmer footing. But they did not. They were a bridge too far for some members and do not appear in the final bill.

While legislative history may oftentimes send mixed signals, this is not one of them. The Agencies are attempting to exercise a power that Congress specifically considered and rejected granting them as recently as 2021. That confirms what is already apparent from the plain text of the statutes—that the Agencies lack the authority to promulgate the Emissions Rule.

The broader statutory context further confirms that Congress did not intend to grant the Agencies these powers. It is not as if Congress did not know how to empower the Agencies to track on-road mobile emissions sources, for it did just that for the separate Congestion Mitigation and Air Quality Program ("CMAQ") in 23 U.S.C. § 150(c)(5)(B). For purposes of carrying out that program, the Agencies "shall establish measures for States to use to assess . . . on-road mobile source emissions." *Id.*[5] The inclusion of that power for the CMAQ places in stark relief the omission of any similar grant of authority regarding the NHPP's performance measures, especially since those provisions are separated by only a handful of lines in the statutory text. Congress plainly granted that power for the CMAQ but withheld

---

[5] Notably, the CMAQ does not cover greenhouse gas emissions like those that the Agencies are attempting to regulate here. Instead, it is limited to "ozone, carbon monoxide, [and] particulate matter." 23 U.S.C. § 149(b).

9

it for the NHPP.

In sum, looking beyond the statutory text to the legislative history and context provides further confirmation that the Agencies lack the power to promulgate the Emissions Rule.

## CONCLUSION

For these reasons, the Court should grant the Plaintiffs' motion for summary judgment and set aside the Emissions Rule as unlawful.

Respectfully submitted,

BAKER BOTTS L.L.P.


By:  /s/ *Matthew G. Sheridan*
    Megan H. Berge (*pro hac vice pending*)
    State Bar No. 983714
    700 K Street, N.W.
    Washington, DC 20001-5692
    (202) 639-1308
    (202) 639-1171 – Fax
    megan.berge@bakerbotts.com

    J. Mark Little (*admission pending*)
    State Bar No. 24078869
    Matthew G. Sheridan
    State Bar No. 24088404
    910 Louisiana Street
    Houston, Texas 77002
    (713) 229-1489
    (713) 229-2789 - Fax
    mark.little@bakerbotts.com
    matthew.sheridan@bakerbotts.com

ATTORNEYS FOR *AMICI CURIAE* AMERICAN ROAD AND TRANSPORTATION BUILDERS ASSOCIATION AND ASSOCIATED GENERAL CONTRACTORS OF AMERICA, INC.

## CERTIFICATE OF SERVICE

I hereby certify that on February 16, 2024, a true and correct copy of the foregoing was served on all counsel of record through the CM/ECF system.

                                             */s/ Matthew G. Sheridan*
                                             Matthew G. Sheridan