# IN THE UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF TEXAS
# LUBBOCK DIVISION

| | |
|---|---|
| STATE OF TEXAS AND TEXAS DEPARTMENT OF TRANSPORTATION,<br><br>*Plaintiffs,*<br><br>v.<br><br>U.S. DEPARTMENT OF TRANSPORTATION, FEDERAL HIGHWAY ADMINISTRATION, PETE BUTTIGIEG, in his official capacity as SECRETARY OF TRANSPORTATION, and SHAILEN BHATT, in his official capacity as ADMINISTRATOR OF THE FEDERAL HIGHWAY ADMINISTRATION,<br><br>*Defendants.* | Civil Action No. 5:23-cv-00304-H |

## TEXAS'S BRIEF IN SUPPORT OF ITS RESPONSE TO DEFENDANTS' CROSS-MOTION FOR SUMMARY JUDGMENT AND REPLY IN SUPPORT OF ITS MOTION FOR SUMMARY JUDGMENT

## TABLE OF CONTENTS

INTRODUCTION ........................................................................................................ 1

ARGUMENT ................................................................................................................ 1

    A.    The Federal Agencies lack congressional authorization for the GHG Measure and a lack of a "prohibition" is not sufficient authorization. .................... 1

    B.    The Final Rule is arbitrary & capricious as it relies upon factors which Congress has not intended and fails to consider compliance costs. ........................ 6

    C.    The Final Rule violates the Spending Clause ...................................................... 9

    D.    The Court has discretion to craft the appropriate relief when vacating the Final Rule for violating the APA, whether Texas-specific, or nationwide. .......... 11

CONCLUSION AND PRAYER ............................................................................... 11

# TABLE OF AUTHORITIES

**Cases**

*FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021)..............................................6

*FEC v. Cruz*, 596 U.S. 289, 301 (2022) ................................................................................4

*La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986) ..................................................4

*Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.* 463 U.S. 29, 43 (1983) ..........................................................................................................................7

*Nat'l Fed. Of Indep. Bus. v. Dep't of Labor*, 595 U.S. 109, 117 (2022)................................4

*Util. Air Regulatory Group v. EPA*, 573 U.S. 302, 324 (2014).............................................4

*W. Va. v. EPA,* 597 U.S. 697, 722-23 (2022)........................................................................4

**Constitutional Provisions & Statutes**

23 U.S.C. § 119(b)(4)............................................................................................................3

23 U.S.C. § 119(d)(2)(M)......................................................................................................3

23 U.S.C. § 119(d)(2)(N).......................................................................................................3

23 U.S.C. § 119(d)(2)(O), (g) ................................................................................................3

23 U.S.C. § 119(d)(2)(R), (k) ................................................................................................3

23 U.S.C. § 149 .....................................................................................................................2

23 U.S.C. § 150(c)(2)(C)....................................................................................................2, 3

23 U.S.C. § 150(c)(3)(A)(ii)(IV)-(V).....................................................................................1

23 U.S.C. § 150(c)(5) ............................................................................................................2

23 U.S.C. § 175(a)(2), (b) .....................................................................................................5

5 U.S.C. § 706(2)(A), (B), & (C)........................................................................................11

**Rules & Regulations**

23 C.F.R. § 1.36 (2022) ..................................................................................................9, 10

87 Fed. Reg. 42,401 (Jul. 15, 2022).......................................................................................8

88 Fed. Reg. 85,364 (Dec. 7, 2023) ......................................................................................8

# INTRODUCTION

The Federal Agencies offer the same refrains provided in the Final Rule's preamble to rebuff the critical deficiencies identified in Texas's motion for summary judgment. Their arguments still do not properly support their claim to establish the GHG Measure upon review of the statutory text, the underlying considerations, or consequences that flow. Texas seeks to hold the Federal Agencies accountable to the statute providing them power to establish performance measures, and the GHG Measure is a step too far. The Court should do the same in vacating the Final Rule.

# ARGUMENT

**A.     The Federal Agencies lack congressional authorization for the GHG Measure and a lack of a "prohibition" is not sufficient authorization.**

Texas does not dispute that the Federal Agencies may establish performance measures to assess "the performance of the Interstate System" and "the performance of the National Highway System (excluding the Interstate System)." 23 U.S.C. § 150(c)(3)(A)(ii)(IV)-(V). But there is no language in subsection (c)(3) that goes as far as to authorize the Federal Agencies to implement the GHG Measure. Instead, just as during the rulemaking process, the Federal Agencies continue to assert that "performance" should be interpreted to include "environmental performance" and therefore are permitted to implement the GHG Measure.

1

The Federal Agencies assert that their interpretation is fundamentally rooted in the national goals enumerated in subsection 150(b). Dkt. No. 25 at 8. But these goals fail to provide the support that the Federal Agencies claim. Texas agrees that the national goals have a role to play with the Federal-aid highway program, which includes the national goal concerning "environmental sustainability." The Federal Agencies can establish performance measures that would meet the environmental sustainability goal. But any performance measure must be first authorized by subsection (c). 23 U.S.C. § 150(c)(2)(C).

Congress has authorized such performance measures. The Federal Agencies are authorized to establish performance measures for the Congestion Mitigation and Air Quality (CMAQ) Program to assess traffic congestion and on-road mobile source emissions. *Id.* § 150(c)(5). The CMAQ Program specifically concerns air quality improvement. *Id.* § 149. But as Texas has previously argued, such performance measures are limited to ozone, carbon monoxide, and particulate matter, and cannot be argued to justify a performance measure focused on $CO_2$ emissions. *See* Dkt. No. 19 at 16; *see also* 23 U.S.C. § 149. Moreover, a performance measure authorized by subsection (c)(5) cannot justify the GHG Measure, which is established as a performance measure by subsection (c)(3) for a different program, the National Highway Performance Program (NHPP). Allowing the stated national goals to expand the Federal Agencies' authority would stand in stark contrast of

2

Congress's clear direction to "limit performance measures only to those described in [subsection (c)]." *Id.* § 150(c)(2)(C).

The Federal Agencies' reliance upon other statutes within Title 23 does not help their cause. Although a purpose of the NHPP is "to provide support for activities . . . to mitigate the cost of damages from sea level rise, extreme weather events, flooding, wildfires, or other natural disasters," 23 U.S.C. § 119(b)(4), this purpose is insufficient to provide the requisite authority. NHPP eligible projects focused on environmental purposes are limited to projects intended for: (1) pollution abatement and environmental restoration related to water pollution or environmental degradation caused by traffic facilities (23 U.S.C. § 119(d)(2)(M)); (2) control of noxious weeds and establishment of native species (23 U.S.C. § 119(d)(2)(N)); (3) environmental mitigation efforts focused on natural habitats and wetlands (23 U.S.C. § 119(d)(2)(O), (g)); or (4) physical protective features to increase the resiliency of the National Highway System to mitigate the risk of natural disasters (23 U.S.C. § 119(d)(2)(R), (k)). Important here: none of these purposes speak to $CO_2$ emissions. Accordingly, section 119 cannot be read to provide support to the Federal Agencies' interpretation of "performance." And because sections 101, 134, and 135 are equally silent with regards to $CO_2$ emissions, there is nothing to grant authority for the GHG Measure.

3

The Federal Agencies seem to imply that if their statutory interpretation is rejected by the Court—which it should be—then they should still be allowed to adopt the GHG Measure because "no provision of law *prohibits* FHWA from adopting a GHG measure either." Dkt. No. 25 at 12 (emphasis original). This worrisome proposition flies in the face of the nature of agencies and Supreme Court precedent. As previously stated, agencies are creatures of statute that possess only the authority that Congress has provided. Dkt. No. 19 at 18; *Nat'l Fed. Of Indep. Bus. v. Dep't of Labor*, 595 U.S. 109, 117 (2022). "An agency . . . 'literally has no power to act'—including under its own regulations—unless and until Congress authorizes it to do so by statute." *FEC v. Cruz*, 596 U.S. 289, 301 (2022) (quoting *La. Pub. Serv. Comm'n v. FCC*, 476 U.S. 355, 374 (1986)). And Congress is expected "to speak clearly if it wishes to assign an agency decisions of vast 'economic and political significance.'" *Util. Air Regulatory Group v. EPA*, 573 U.S. 302, 324 (2014) (citation omitted). It is not enough for agency action to have a "colorable textual basis," and instead Congress's authorization must be "clear." *W. Va. v. EPA,* 597 U.S. 697, 722-23 (2022).

The Federal Agencies claim that the major questions doctrine should not apply because "[t]he Final Rule does not have vast economic or political impacts." Dkt. No. 25 at 14. But this characterization ignores the reality of the Final Rule and is based upon the Federal Agencies' own faulty analyses presented during the

4

rulemaking. As explained in Texas's opening brief, "the Federal Agencies failed to account for the costs that would be incurred in taking the action necessary to meet the declining emissions targets . . . ." Dkt. No. 19 at 8. The Federal Agencies should not now be allowed to hide behind its own failures to avoid the need for clear congressional authority. Furthermore, as highlighted by the legislative history of the Infrastructure Investment and Jobs Act (IIJA), $CO_2$ emissions and actions taken to reduce them remain a highly debated topic. Although the earliest versions of the IIJA included language that would have authorized the GHG Measure for the NHPP, such language was removed throughout the legislative process, indicating the political significance that underlies this action. *See* Dkt. No. 15-20 at FHWA004162-65, FHWA004180-81, FHWA004207-08. Instead, Congress chose to establish the Carbon Reduction Program found in a completely different section, 23 U.S.C. § 175, which specifically provides for the reduction from on-road highway sources of $CO_2$. 23 U.S.C. § 175(a)(2), (b).

The Federal Agencies correctly acknowledge that the major questions doctrine may be triggered when "an agency 'claim[s] to discover in a long-extant statute an unheralded power' representing a 'transformative expansion in [its] regulatory authority.'" Dkt. No. 25 at 13 (citation omitted). In arguing against the application of the major questions doctrine, however, the Federal Agencies indicate that the authority to establish performance measures is too recent to fall within this trigger.

5

*Id.* at 14. By focusing on the enactment date for 23 U.S.C. § 150, the Federal Agencies ignore that the statutes they rely upon for their interpretation of "performance"—sections 101, 119, 134, and 135—have been on the books significantly longer and have only recently been used to support an expansion of authority by the Federal Agencies into the environmental realm.

The Federal Agencies cannot identify the clear language that authorizes the GHG Measure simply because such language does not exist. Statutory silence is not enough to permit promulgation of the Final Rule. As such, the Federal Agencies lack the authority needed here.

**B.    The Final Rule is arbitrary & capricious as it relies upon factors which Congress has not intended and fails to consider compliance costs.**

The Final Rule also must be vacated because it is arbitrary and capricious. While judicial review under this standard is deferential, agency action must still be "within a zone of reasonableness" and the agency must have "reasonably considered the relevant issues and reasonably explained the decision." *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021). Agency action is arbitrary and capricious "if the agency has relied on factors which Congress has not intended it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before the agency, or is so implausible that it could not be ascribed to a difference in view or the product of agency

6

expertise." *Motor Vehicle Mfrs. Ass'n of U.S., Inc. v. State Farm Mut. Auto. Ins. Co.* 463 U.S. 29, 43 (1983).

The Final Rule—specifically the GHG Measure—cannot be considered to be reasonable. As established above and in prior briefing, Congress has not authorized the Federal Agencies to consider $CO_2$ emissions or climate change when establishing performance measures for the NHPP. The legislative decision to exclude authorizing language from the IIJA supports this position. And although the Federal Agencies continue to assert that the Final Rule is detached from President Biden's executive orders, *see* Dkt. No. 25 at 16, they do not dispute their own statements made in the Final Rule that demonstrate how the Final Rule is extrinsically linked to the orders. *See* Dkt. No. 19 at 10. At any rate, the GHG Measure, which is focused on the reduction of $CO_2$ emissions from on-road mobile sources, falls within the scope of expertise of primarily environmental agencies, rather than transportation agencies.

The Federal Agencies also fail to consider an important aspect of the problem, namely, the full costs associated with the Final Rule. *See* Dkt. No. 15-20 FHWA00004209-15. In an attempt to minimize Texas's concerns, the Federal Agencies claim that the Final Rule "imposes no requirement on states to actually take the actions they say they will take [and] carries no associated costs beyond the cost of submitting the reports." Dkt. No. 25 at 18. But a reading of the record indicates that, although the Federal Agencies have not proposed a specific penalty

7

for failure to achieve the emissions targets, "[f]ailure to comply with Federal requirements . . . may be subject to penalties under 23 CFR 1.36." Dkt. No. 15-2 at FHWA000046, fn. 39.

Furthermore, the Federal Agencies' argument concerning these costs is disingenuous and cannot be reasonably explained. The Final Rule's language clearly contemplates that state departments of transportation (State DOTs) will take action because it forces State DOTs to provide data-supported explanations for not meeting a declining target and document actions it will take to achieve the declining targets for the Federal Agencies' review. *Id.* at FHWA000015, FHWA000021-22.

The Federal Agencies also consistently explain the purpose of the Final Rule is to affect State DOTs' decision-making process and they "anticipate" reductions in GHG emissions from these decisions and actions. *Id.* at FHWA000007-8, FHWA000016, FHWA000027. The Federal Agencies also point to funding provided as part of the IIJA to help State DOTs take actions to achieve the declining targets, even though Texas disagrees that this federal funding may be used for the NHPP because it is linked to a different program. *Id.* at FHWA000014.

The Final Rule language—and the Federal Agencies' commentary—signal the expectations for State DOTs to take actions to achieve the declining targets, and the Federal Agencies failed to take the costs of these actions into account when promulgating the Final Rule. The Federal Agencies cannot improperly side-step this

8

deficiency by also arguing the Final Rule requires no actions to warrant considering the costs that flow from them. The uncertainty surrounding penalties, combined with the absurdity of a purely aspirational rulemaking, would prompt action to meet the emissions goals. As such, the Federal Agencies should have accounted for the full compliance costs.

**C. The Final Rule violates the Spending Clause**

The Federal Agencies claim that Texas's constitutional argument is based upon a "misunderstanding" of the Final Rule. Dkt. No. 25 at 19. In their view, because the Final Rule (allegedly) "neither require[s] any specific targets nor mandat[es] any penalties for failing to achieve these targets," NHPP is not at risk. *Id.* at 20. But this position glosses over the reality of the Final Rule and the Federal Agencies' own admissions to that effect.

The Federal Agencies' representations, even if true, ignore the larger regulatory framework that State DOTs must abide. Specifically, the FHWA's regulations provide that if the Federal Highway Administrator determines that a state has not complied with relevant statutes or regulations, then he may "withhold payment to the State of Federal Funds . . . , withhold approval of further projects in the State, and take such other action that he deems appropriate . . . , until compliance or remedial action has been accomplished by the State to the satisfaction of the Administrator." 23 C.F.R. § 1.36 (2022). Thus, the Federal Agencies could easily

9

determine that if Texas failed to meet its declining emissions targets for a fiscal year, provided unsatisfactory explanations for not achieving the targets, or not sufficiently document any actions it may take for future compliance, they could either withhold funding, withhold project approvals, or "take such other action [they] deem[] appropriate." *Id.* And although the Federal Agencies routinely provide statements that they will not penalize the states for non-compliance, the risk of losing funding or projects remains present in the regulatory scheme and at the whim of the Federal Agencies.

Moreover, the Federal Agencies seek to shift the key inquiry from whether the statute provides for "clear notice" of the obligations to whether the federal funding is at risk. Dkt. No. 25 at 20. For the same reasons already articulated in Texas's initial brief challenging the Final Rule, and in this brief, the Federal Agencies fail to demonstrate that Congress conditioned NHPP federal funding to be used to require State DOTs to implement the GHG Measure.[1]

---

[1] Texas disagrees with the Federal Agencies' conclusion that Texas waived its argument as to the reporting requirement violates the Spending Clause. *See* Dkt. No. 25 at 20, n. 5. Texas was clear in its brief supporting its motion for summary judgment that the Final Rule in its entirety violates the Spending Clause and did not specifically narrow its argument to only part of the Final Rule. *See* Dkt. No. 19 at 24-25 ("Congress has not provided clear notice to Texas (or the states) that NHPP federal funds are conditioned upon implementing the GHG Measure as required in the Final Rule.").

10

**D.     The Court has discretion to craft the appropriate relief when vacating the Final Rule for violating the APA, whether Texas-specific, or nationwide.**

Texas challenges the Final Rule for several reasons under the APA, 5 U.S.C. § 706(2)(A), (B), and (C). The Court is provided broad discretion to appropriately determine the necessary relief in setting aside an agency action found to be promulgated in violation of the APA, whether state specific or nationwide. Texas seeks vacatur of the Final Rule—which applies to all states as part of a comprehensive, federally funded program—and defers to the Court on the geographical scope of that relief, whether it is limited to only Texas or expanded to nationwide relief.

## CONCLUSION AND PRAYER

Despite their best attempts, the Federal Agencies fail to salvage the Final Rule. As conclusively established, the Final Rule exceeds the Federal Agencies' statutory authority, is arbitrary and capricious, and violates the Constitution. As such, the Final Rule should be vacated and the Court should grant such relief as deemed appropriate.

Dated:   February 27, 2024              Respectfully submitted,

                                        KEN PAXTON
                                        Attorney General of Texas

                                        BRENT WEBSTER
                                        First Assistant Attorney General

JAMES LLOYD
Deputy Attorney General for Civil Litigation

KELLIE E. BILLINGS-RAY
Chief, Environmental Protection Division

*/s/ Logan Harrell*
LOGAN HARRELL
Assistant Attorney General
State Bar No. 24106054
Logan.Harrell@oag.texas.gov

WESLEY S. WILLIAMS
Assistant Attorney General
State Bar No. 24108009
Wesley.Williams@oag.texas.gov

OFFICE OF THE ATTORNEY GENERAL
ENVIRONMENTAL PROTECTION DIVISION
P.O. Box 12548, MC-066
Austin, Texas 78711-2548
(512) 463-2012 | Fax: (512) 320-0911

**COUNSEL FOR THE STATE OF TEXAS AND THE TEXAS DEPARTMENT OF TRANSPORTATION**