**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF TEXAS**
**LUBBOCK DIVISION**

STATE OF TEXAS, *et al.*,

Plaintiffs,

v.

U.S. DEPARTMENT OF TRANSPORTATION, *et al.*,

Defendants.

Case No. 5:23-cv-00304-H

**DEFENDANTS' REPLY BRIEF IN FURTHER SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT**

**TABLE OF CONTENTS**

INTRODUCTION ........................................................ 1

ARGUMENT ........................................................ 1

I. The Final Rule Imposes No Penalties for Failure to Meet Targets. .......................... 1

II. FHWA Has Statutory Authority Under 23 U.S.C. § 150(c)(3)(A)(ii)(IV)–(V) to Issue the Final Rule. .......................... 3

III. The Final Rule Is Not Arbitrary and Capricious. .......................... 7

IV. The Final Rule Does Not Violate the Spending Clause. .......................... 8

CONCLUSION ........................................................ 8

## TABLE OF AUTHORITIES

### CASES

*Am. Textile Mfrs. Inst., Inc. v. Donovan*,
452 U.S. 490 (1981) ........ 4

*Balt. Gas & Elec. Co. v. Nat. Res. Def. Council, Inc.*,
462 U.S. 87 (1983) ........ 7

*Bostock v. Clayton Cnty.*,
140 S. Ct. 1731 (2020) ........ 6

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ........ 8

*FCC v. Prometheus Radio Project*,
592 U.S. 414 (2021) ........ 8

*Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*,
458 U.S. 141 (1982) ........ 4

*Pension Ben. Guar. Corp. v. LTV Corp.*,
496 U.S. 633 (1990) ........ 6

*Whitmore v. Arkansas*,
495 U.S. 149 (1990) ........ 8

### STATUTES

23 U.S.C. § 119 ........ 5

23 U.S.C. § 150 ........ *passim*

### REGULATIONS

23 C.F.R. § 1.36 ........ 2, 8

23 C.F.R. § 490.109 ........ 2

23 C.F.R. § 490.507 ........ 2

National Performance Management Measures; Assessing Performance of the National Highway System, Greenhouse Gas Emissions Measure,
88 Fed. Reg. 85,364 (Dec. 7, 2023) ........ *passim*

## INTRODUCTION

Through the Transportation Performance Management ("TPM") statutory scheme, Congress authorized the Federal Highway Administration ("FHWA") to establish measures for performance of the National Highway System ("NHS"). FHWA exercised this authority in publishing a Final Rule establishing a measure for greenhouse gas ("GHG") emissions from on-road mobile sources on the NHS. The GHG measure is a data-collection and reporting rule through which states and metropolitan planning organizations ("MPOs") gather data, set targets, and submit reports. In challenging the Final Rule, Texas twists it into something the Final Rule explicitly disclaims: a requirement that states reduce GHG emissions on NHS roads within their jurisdiction or else suffer consequences. In fact, states incur no penalty for failing to meet declining emissions targets. As such, all of Texas's claims for relief fail. The Court should grant summary judgment for Defendants.

## ARGUMENT

### I. The Final Rule Imposes No Penalties for Failure to Meet Targets.

Throughout its brief, Texas mischaracterizes the Final Rule as something other than a data-collection and reporting rule. Texas wrongly contends that the Final Rule necessitates that states "tak[e] . . . action . . . to meet the declining emissions targets," Texas's Br. in Supp. of its Resp. to Defs.' Cross-Mot. for Summ. J. & Reply in Supp. of its Mot. for Summ. J. at 5, ECF No. 30 ("Pls.' Response"), and mistakenly asserts that FHWA has "not proposed a specific penalty for failure to achieve the emissions targets," *id.* at 7–8, rather than acknowledging that the Final Rule affirmatively says that no penalty will be imposed. And Texas further speculates, based on pure conjecture and without demonstrating any history of enforcement under the TPM program, that FHWA "could easily determine that if Texas failed to meet its declining emissions targets for a fiscal year, provided unsatisfactory explanations for not achieving the targets, or [did] not

sufficiently document any actions it may take for future compliance, [FHWA] could either withhold funding[ or] withhold project approvals." *Id.* at 9–10.

The Final Rule could not be more clear: there is no penalty for a state's or MPO's failure to meet its emissions targets. It states: "There are no specific penalties for failing to achieve GHG targets. . . . Failure to achieve significant progress for this measure, as defined in 23 C.F.R. 490.109, will also not trigger any penalties." National Performance Management Measures; Assessing Performance of the National Highway System, Greenhouse Gas Emissions Measure ("Final Rule"), 88 Fed. Reg. 85,364, 85,378 (Dec. 7, 2023) (emphasis added). The Final Rule repeats this elsewhere: "The rule . . . imposes no penalties on States and MPOs that do not meet their targets . . . ." *Id.* at 85,380; *see also id.* at 85,367 ("The FHWA is neither requiring any specific targets nor mandating any penalties for failing to achieve these targets.").[1]

The goal of the Final Rule is "to help State DOTs and MPOs consistently and transparently monitor the current performance of the NHS, and plan transportation projects in a way that protects the long-term performance of the NHS." *Id.* "The rule provides State DOTs and MPOs with the tools to consider GHG emissions in making transportation decisions and imposes no penalties on States and MPOs that do not meet their targets . . . ." *Id.* at 85,380. In other words, the Final Rule is a data-collecting and

[1] In an effort to make something out of nothing, Texas seizes on a single mention in the record of FHWA's general authority at 23 CFR § 1.36 to take action it deems appropriate to bring a grantee into compliance with relevant statutes and regulations as support for its assertion that FHWA will penalize States that do not meet their GHG emissions targets under the Final Rule. *See* Pls.' Response at 7–9. This argument fails for the same reason as do Texas's broader claims that the Final Rule is unconstitutional or arbitrary and capricious: it erroneously conflates the Final Rule's actual requirement to collect and report data on $CO_2$ emissions on the NHS with the nonexistent requirement that it adjust its spending of Federal-aid highway dollars on highway projects in any way. Texas or any other state can comply with the Final Rule by collecting and reporting GHG emission data as provided in the Final Rule in the same manner as the seventeen other performance measures that comprise the TPM program.

reporting device designed to increase information transparency. Texas is therefore correct that the Final Rule "contemplates that state departments of transportation (State DOTs)" may "take action" to reduce GHG emissions. Pls.' Response at 8; *see also id.* (noting that FHWA "anticipate[s]" reduction in GHG emissions). The intent is that states—or at least some states—will consider the data provided through the GHG emissions measure and voluntarily take actions and select projects that will reduce GHG emissions. *See* 88 Fed. Reg. at 85,375 ("Th[e Final Rule] does not *require* State DOTs and MPOs to change their approach to selecting projects." (emphasis added)). But Texas is wrong in suggesting that such actions are *mandatory* under the Final Rule. The Final Rule merely provides state and local decisionmakers with information and gives them the option of using that information in deciding whether to take action to reduce GHG emissions. Texas cannot claim injury from being afforded the option to take action, and it cannot—consistent with Article III—obtain relief from the Final Rule based on speculative harms that are clearly disclaimed in the rule itself.

## II. FHWA Has Statutory Authority Under 23 U.S.C. § 150(c)(3)(A)(ii)(IV)–(V) to Issue the Final Rule.

As Defendants explained in their opening brief, FHWA has statutory authority to establish a measure for collecting and reporting GHG emissions data under 23 U.S.C. § 150(c)(3)(A)(ii)(IV)–(V). *See* Defs.' Combined Br. in Supp. of Cross-Mot. for Summ. J. & Resp. in Opp'n to Pls.' Mot. for Summ. J. at 8–13, ECF No. 25 ("Defs.' Br."). Those subsections grant authority for FHWA to establish measures for "the performance of" the Interstate System and the NHS, and in context of the entire TPM statute, "performance" is naturally read to include environmental performance in furtherance of the goal of environmental sustainability. *See id.*

The more cramped reading of "performance" that excludes environmental performance advanced by Texas must fail. Nowhere does Texas provide an alternative understanding of the term "performance." Texas points to other parts of the TPM statute

that authorize the establishment of certain other measures, for example, related to the Congestion Mitigation and Air Quality (CMAQ) program, *see* 23 U.S.C. § 150(c)(5), suggesting that Congress should have more explicitly spelled out authority for a GHG emissions measure. By that logic, however, the term "performance" under 23 U.S.C. § 150(c)(3)(A)(ii)(IV)–(V) would be left with virtually no meaning at all. Other subsections already authorize measures for condition of pavements, *id.* § 150(c)(3)(A)(ii)(I)–(II), condition of bridges, *id.* § 150(c)(3)(A)(ii)(III), highway safety including serious injuries and fatalities per vehicle mile traveled, *id.* § 150(c)(4), traffic congestion, *id.* § 150(c)(5)(A), and freight movement, *id.* § 150(c)(6). In further directing the agency to establish measures for "the performance of" the NHS, *id.* § 150(c)(3)(A)(ii)(IV)–(V), Congress clearly intended to authorize FHWA to establish additional performance measures over and beyond those already encompassed within neighboring paragraphs. The additional measures authorized by 23 U.S.C. § 150(c)(3)(A)(ii)(IV)–(V) are, at a minimum, reasonably read to include measures directed to the other "national goals" set forth in the preceding subsection, including "[e]nvironmental sustainability." *Id.* § 150(b). Texas's refusal to afford any meaning to 23 U.S.C. § 150(c)(3)(A)(ii)(IV)–(V) would render those provisions "nugatory, 'thereby offending the well-settled rule that all parts of a statute, if possible, are to be given effect.'" *Fid. Fed. Sav. & Loan Ass'n v. de la Cuesta*, 458 U.S. 141, 163 (1982) (quoting *Am. Textile Mfrs. Inst., Inc. v. Donovan*, 452 U.S. 490, 513 (1981)).

FHWA's authority to establish "performance" measures under 23 U.S.C. § 150(c)(3)(A)(ii)(IV)–(V) is certainly complementary to other specific authorizations in the TPM statute, including the authorization to issue CMAQ measures under 23 U.S.C. § 150(c)(5). But they are not coextensive. Among other distinctions, "performance" measures issued under 23 U.S.C. § 150(c)(3)(A)(ii)(IV)–(V) can extend only to the Interstate System and the NHS, as opposed to other roads within a state, and this limitation does not appear in, for example, the CMAQ measure of 23 U.S.C. § 150(c)(5).

*See* 88 Fed. Reg. at 85,367.[2] The fact that FHWA may have some parallel, or even overlapping, authority to issue certain measures under 23 U.S.C. § 150(c)(3)(A)(ii)(IV)–(V) and related measures under another subsection does not mean FHWA lacks authority to issue environmental performance measures, including the GHG emissions measure, under 23 U.S.C. § 150(c)(3)(A)(ii)(IV)–(V).

Texas also misconstrues FHWA's argument concerning the source for its authority. First, Texas says that FHWA improperly relied on other provisions of Title 23 as a source of the agency's authority to promulgate the Final Rule. *See* Pls.' Response at 3. FHWA has authority to promulgate the Final Rule under 23 U.S.C. § 150(c)(3)(A)(ii)(IV)–(V), and it has never claimed authority to do so under any other provision. While in the Final Rule FHWA identified other provisions of Title 23, such as 23 U.S.C. § 119(b)(4), (d)(2), it invokes such provisions only to support its reading of 23 U.S.C. § 150(c)(3)(A)(ii)(IV)–(V) that "performance" includes environmental performance, explaining that other programs related to the NHS also place an emphasis on environmental performance and mitigation of damage due to climate change in particular. *See* Defs.' Br. at 9–11.

Further misreading the Final Rule, Texas suggests that FHWA argued that it could establish a GHG emissions measure in the absence of any statutory grant of authority because "no provision of law *prohibits* FHWA from adopting a GHG measure." Pls.' Response at 4. FHWA explained that 23 U.S.C. § 150(c)(3)(A)(ii)(IV)–(V) provides statutory authority to establish a measure for GHG emissions, and FHWA does not argue that it can issue a measure without congressional authorization. Indeed, FHWA noted that it "does not believe its authority in this area is unlimited" in explaining that the GHG emissions measure could not extend to roads within a state or MPO that are not part of

[2] This limitation gives meaning to 23 U.S.C. § 150(c)(2)(C)'s direction that FHWA "limit performance measures only to those described in" 23 U.S.C. § 150(c). A measure for GHG emissions on all roads in a state would violate 23 U.S.C. § 150(c)(2)(C).

the NHS. 88 Fed. Reg. at 85,367. Nevertheless, that no provision indicates that FHWA lacks authority under 23 U.S.C. § 150(c)(3)(A)(ii)(IV)–(V) to issue a GHG emissions measure is relevant in interpreting the meaning of "performance," especially given that Congress had an opportunity to amend the statute after FHWA's 2017 Rule and declined to do so. *See* Defs.' Br. at 12–13 (citing *Pension Ben. Guar. Corp. v. LTV Corp.*, 496 U.S. 633, 650 (1990)). If Congress had intended to disable FHWA from considering environmental performance as a component of the "performance" measures authorized by 23 U.S.C. § 150(c)(3)(A)(ii)(IV)–(V), it would have said so. *See, e.g.*, *Bostock v. Clayton Cnty.*, 140 S. Ct. 1731, 1747 (2020) (rejecting notion that "Congress's failure to speak directly" to a particular application "creates a tacit exception" to "a more general statutory rule" and stating on the contrary, "when Congress chooses not to include any exceptions to a broad rule, courts apply the broad rule").

Finally, Texas's invocation of the major questions doctrine wholly relies on the mistaken premise that the Final Rule requires states to achieve declining GHG emissions. *See* Pls.' Response at 4–6. Texas contends that achieving declining emissions would impose great costs and economic impact, and therefore that the Final Rule implicates a major question. But Texas's argument fails, for the Final Rule requires no such thing. *See supra* Part I. The Final Rule is merely a data-collecting and reporting device, and Texas points to no similar rule that was deemed to implicate a major question. Texas's suggestion that FHWA claimed to discover "unheralded power" in a "long-extant statute," Pls.' Response at 5–6, fares no better. Congress enacted the TPM statute, including 23 U.S.C. § 150(c)(3)(A)(ii)(IV)–(V), around a decade ago, *see* Defs.' Br. at 14, and that statute is the basis for FHWA's authority to issue the Final Rule, not any older statute that happens to provide interpretative guidance, as Texas suggests, *see* Pls.' Response at 6. So the "long-extant statute" rule does not apply.

**III. The Final Rule Is Not Arbitrary and Capricious.**

Texas's arguments that the Final Rule is arbitrary and capricious are without merit. First, Texas briefly repeats its arguments that "Congress has not authorized" FHWA "to consider $CO_2$ emissions or climate change when establishing performance measures," and its argument that the Final Rule is somehow inappropriately connected to executive orders. *See* Pls.' Response at 7. Defendants already dispelled these arguments, Defs.' Br. at 16–17, and Texas does not address any of Defendants points in response. Texas also says that the GHG measure "falls within the scope of expertise of primarily environmental agencies, rather than transportation agencies." Pls.' Response at 7. But courts must be at their "most deferential" when reviewing an agency's "scientific determination." *Balt. Gas & Elec. Co. v. Nat. Res. Def. Council, Inc.*, 462 U.S. 87, 103 (1983). Texas provides no basis to conclude that FHWA, or the Department of Transportation more broadly, lacks scientific expertise about on-road emissions sources. Indeed, Congress listed environmental sustainability as one of the goals of the TPM program, 23 U.S.C. § 150(b)(6), and specifically authorized FHWA to establish measures of emissions for the CMAQ program. Congress therefore understood FHWA to be capable of making scientific determinations of this sort. In any event, because Texas does not challenge the soundness of any scientific determination underpinning the Final Rule, its argument is inapposite.

The remainder of Texas's argument is that FHWA did not consider the alleged costs to states of achieving declining GHG emissions targets. Pls.' Response at 7–9. This argument is rooted in the faulty premise that the Final Rule requires states to achieve declining emissions targets. It does not. *See supra* Part I. In any event, as explained before, *see* Defs.' Br. at 18, FHWA considered the comment Texas submitted regarding alleged costs and expressly addressed it in the Final Rule, *see* 88 Fed. Reg. at 85,379. Nothing more is required under the APA, *see* Defs.' Br. at 18 (citing *FCC v. Prometheus Radio Project*, 592 U.S. 414, 423 (2021)), and Texas offers no response to the contrary.

## IV. The Final Rule Does Not Violate the Spending Clause.

Texas's Spending Clause argument, too, is premised on the same faulty premise that the Final Rule requires states to achieve declining GHG emissions targets. But the Final Rule neither imposes such a requirement, nor any penalties for failure to meet the targets, *see supra* Part I, and certainly creates no likelihood that FHWA would withhold highway funding to a state that failed to do so, *see* Defs.' Br. at 19–20. Because declining emissions is not a condition on funding, there is no need to undertake a Spending Clause analysis. *See id.*

To the extent that Texas now argues that the requirements for states to set targets and submit reports are themselves unconstitutional conditions on funding, these arguments are misplaced as well. As an initial matter, Texas waived this argument. *See id.* at 20 n.5. And even if it had not, Texas provides no evidence that its funding is at risk over failure to set targets or submit reports. *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (holding that in order for plaintiffs to have standing, the "threatened injury must be *certainly impending*" and not merely "*possible*" (emphasis in original) (quoting *Whitmore v. Arkansas*, 495 U.S. 149, 158 (1990))). While 23 C.F.R. § 1.36 authorizes FHWA to "take such . . . action that [the agency] deems appropriate under the circumstances" when a state fails to comply with FHWA regulations, including possibly "withhold[ing of] payment to the State of Federal funds," Texas neither alleges nor provides evidence of FHWA withholding funds for noncompliance with the TPM program in the past, nor any reason why such action is likely or certainly impending for noncompliance with the Final Rule. In any event, the statute clearly authorizes FHWA to establish measures and require states to set targets that reflect those measures and submit reports to FHWA. *See* 23 U.S.C. § 150(c)–(e). The Final Rule therefore does not violate the Spending Clause.

## CONCLUSION

For the foregoing reasons, the Court should grant Defendants' cross-motion for summary judgment.

DATED: March 5, 2024

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

JULIE STRAUS HARRIS
Assistant Branch Director

/s/ *Michael P. Clendenen*
MICHAEL P. CLENDENEN
Trial Attorney
Civil Division, Federal Programs Branch
U.S. Department of Justice
1100 L Street, NW
Washington, DC 20005
Phone: (202) 305-0693
E-mail: michael.p.clendenen@usdoj.gov

*Counsel for Defendants*

**Certificate of Service**

On March 5, 2024, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ *Michael P. Clendenen*